STEPHENS COUNTY v. TOM C. HEFNER.

No. 4576. Decided April 24, 1929.
(16 S. W., 2d Series, 804.)

398

*Goggins & Andrews, S. J. Osborne,* and *B. O. Baker,* for appellant.

*McCartney, Foster & McGee and Crate Dalton,* for appellee.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case was originally submitted in Section B of the Commission, and the opinion hereto attached was written by Judge Leddy of that Section of the Commission.

We have carefully considered this case, and Judge Leddy's opinion reflects the views of this Section of the Commission, and we therefore adopt the same as our opinion and recommend that the questions herein certified be answered as recommended in said opinion of Judge Leddy hereto attached.

MR. JUDGE LEDDY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Eleventh Supreme Judicial District submits certified questions for the determination of the Supreme Court. Simply stated, the question to be determined is whether the tax assessor of Stephens County was exempted from the maximum salary provision contained in the Act of 1923, (Regular Session, p. 327).

A proper determination of this question requires a review of legislation enacted upon the subject. Prior to 1897 there was no maximum salary provision for county officers. They were entitled to retain all fees of office collected by them. In 1897 the Legislature enacted a fee bill (Acts .1897, p. 542) fixing a maximum salary for all county officers, such provision being Article 2495c, R. S.

1911. Article 2495d was a part of this act and required such officers to make a sworn annual report to the district court of the amount of the fees charged and collected by them. Another provision of this act was Article 2495i, which required such officers to keep an itemized statement of all fees charged and collected. The clear purpose of these requirements was to furnish a satisfactory method by which the various counties involved could make settlements with their officers in regard to the fees above the maximum amount the officer was allowed to retain. In order to safeguard the interests of the county in such fees, the grand jury was required to annually investigate the reports filed by such officers. In addition to having the benefit of the grand jury investigation of the correctness of the officers' reports, the counties were given the additional protection of having its officers, in making settlements under their reports, to be subject to the pains and penalties of perjury.

Section 17 of the Act of 1897, which is Article 3898, R. S. 1911, reads as follows:

"The officers named in Article 2495c, in those counties having a population of 15,000, or less, shall not be required to make a report of fees as provided in Article 2495d, or to keep a statement provided for in Article 2495i."

This provision of the above act remained unchanged until the same was amended in 1913, Acts Regular Session, p. 246. The only change made in Article 3898, (Sec. 17, Act 1897) was to increase the population of the counties from 15,000 to 25,000, in which officers were exempt from making the report of fees collected as provided in Article 3895, and from keeping the statement of fees charged and collected required by Article 3894.

The act of 1897, as amended in 1913, was effective until 1919, at which time it was repealed by Section 4, of the Act of 1919, Regular Session, p. 299, such repealing statute reading as follows:

"That Article 3898, Revised Civil Statutes of 1911, as amended by Chapter 121, Acts 33rd Legislature, passed at its Regular Session be, and is hereby, in all things repealed."

After this repealing act had been in effect for four years, the Legislature, at its regular session in 1923, (Acts p. 397) re-enacted Article 3898 in the identical language as the same existed at the time of its repeal.

As Section 17 of the Act of 1897, (Article 3898, R. S. 1911), was in force as a part of the law of this state for a period of 22 years before it was repealed, and in view of the fact that the

same was repealed and re-enacted in the identical language in which it had theretofore existed, a proper construction of the re-enacted law can be arrived at by ascertaining the construction placed upon this provision during the long period it was in force, prior to its re-enactment, by the courts, the Legislature, and the executive departments of the state.

In the interpretation of re-enacted statutes, Mr. Sutherland, in his excellent work on Statutory Construction, Vol. 2, Sec. 403, says:

"The court will follow the construction which they received when previously enforced. The Legislature will be presumed to know the effect which certain statutes originally had and by re-enactment to intend that they should again have the same effect."

In Brown v. Hanscom, 90 Texas, 328, our Supreme Court, speaking through Mr. Justice Gaines, announced a similar rule in this language:

"It is to be presumed that the Legislature knew of the construction that had been placed on the text and that if they were not satisfied with it, they would have so changed the verbiage as to have shown clearly a contrary intention."

The rule so announced has been frequently held to apply to the re-enactment of a statute which has received a practical construction upon the part of those called on to execute it. Houston & T. C. Ry. Co. v. State of Texas, 95 Texas, 521; Galveston, H. & S. A. Ry. Co. v. State, 81 Texas, 602, 17 S. W., 67; Bloxham v. Consumers Electric Co., 26 Fla., 519, 39 L. R. A., 507; Commonwealth v. Grand, C. B. & L. Ass'n, 97 Ky., 325; State v. Moore, 50 Neb., 88.

It appears that the Attorney-General's Department, in the discharge of its duty in advising county officers, with one exception, has uniformly construed Article 3898 as having the effect of exempting all officers in counties of less than the number of inhabitants specified therein from the maximum salary provision of the fee bill. The rulings of that department have been acted upon by public officers throughout this state for practically a quarter of a century. The single exception to the rule was made by the Attorney-General in 1914. An examination of that opinion, however, discloses an admission by the then Attorney-General that the effect of Section 17 of the Act of 1897 was to exempt officers in counties of less population than 15,000 from the maximum salary provision of the act. It was asserted by the Attorney-General that the amendment of 1913 had the effect of placing said officers under the maximum salary provision. The opinion does not cite, and we are left to conjecture,

what particular provision of the Act of 1913 had this effect. After a most careful consideration of this act, we do not find any provision which in our opinion sustains the ruling of the Attorney-General. In the succeeding administrations of that department, this opinion was overruled and the uniform construction theretofore placed upon said act was resumed, and such construction continued up to the date of the repeal of Article 3898 by the Act of 1919. After this repeal it was held by the Attorney-General that by reason thereof all county officers named in the fee bill were subject to the maximum salary provision.

When the Legislature in 1923 re-enacted Article 3898, couched in the identical language in which it was a part of the statutes of this state for 22 years, it did so with presumptive knowledge of the fact that the latest ruling by the executive department of the state was that the effect of said provision was to exempt certain officers from the maximum salary provision, and that under the practical construction placed upon said article county officers in several hundred counties were retaining all of the fees collected by them on the theory that they were permitted to do so by such article, hence it must be assumed that the Legislature intended by the re-enactment of Article 3898, unchanged in verbiage, that it should be given the construction theretofore placed upon it by public officials throughout the state. If it had been intended that the re-enacted article should have a different effect, the Legislature no doubt would have used language too clear and plain to be misunderstood to indicate such intention.

In addition to the departmental construction this particular section of the Act of 1897 has been construed by the courts of this state. In every case in which this provision has received consideration it has been recognized that officers in counties of the population specified therein were not affected by the restriction on the amount of fees they were permitted to retain.

In the case of Stephens v. Campbell, 63 S. W., 161, insistence was made that Gregg County having less than 15,000 population, the county judge would be under the old law which provided a commission for such officer in acting as ex officio county superintendent of public schools. The direct question here presented was only incidentally involved. In passing upon the question to be decided, the court said:

"It is further insisted by Appellants that inasmuch as Article 2485J of the Act in question provides that in counties having a

population of 15,000 inhabitants or less, none of the officers named in Article 2495c (3881) shall be required to make a report of the fees collected by them annually, *the County of Gregg is unaffected by the act and is operating under the old law. This is practically true so far as the officers affected by the restriction on the amount of annual fees they are permitted to retain are concerned,* but is not true as to the nature of the ex officio compensation of the County Judge of said county."

In Ellis County v. Thompson, 95 Texas, 22, Justice Brown recognized that the effect of Article 3898 was to exempt officers in certain counties from the maximum salary provision of the fee bill. In discussing the fee bill he said:

"The purpose for which the law was enacted is a matter of prime importance in arriving at a correct interpretation of its terms. If it were true, as claimed, that the object of the legislature in enacting the law was to enlarge the rights of the officers named it should be construed so as to accomplish the legislative intent, and our conclusion would not be correct, because it is not reached from that point of view. Before the enactment of that statute, the officers received and appropriated to their own use all fees derived from the performance of their official duties, and their interest would have been best served by leaving the law as it was, *as was done with counties having a population of 15,000 or less.*"

It is true that Judge Brown's pronouncement on this question was dicta. While the same is not binding as an authority on the question, yet it is material as a recognition by the court of the effect of the act in question. It was a practical construction of the act by distinguished jurists of a court of last resort, and, even though dicta, was of sufficient importance to call the Legislature's attention to the fact that this view, though not definitely decided, was tentatively held by the Supreme Court and was sufficient to have operated as a warning that if the Legislature intended a different result, they should make that intention reasonably clear in re-enacting this statute.

A similar recognition of this act was given by the Court of Civil Appeals in the case of Russell v. Cordwent, 152 S. W., 239, in which it was said:

"We may assume that Callahan County has less than 15,000 population when determined as the statute declares it shall be by the vote cast at the last preceding presidential election and that the

*legislature conclusively presumed that in such counties* the amount of all fees and costs collected by county officers would not exceed the maximum allowed by Article 3881 and for that reason exempted them from making the reports required of officers in the more populous counties."

We think the question involved in this case is foreclosed by the decision of our Supreme Court in the case of Moorman v. Terrell, Comptroller, 202 S. W., 727. In that case the relator's right to a writ of mandamus depended upon the construction to be given Article 2986, R. S. 1911, being Section 144 of the General Laws regulating elections, passed by the First Special Session of the Legislature in 1905, which reads as follows:

"The collector of taxes shall be paid fifteen cents for each poll tax receipt and certificate of exemption issued by him, to be paid pro rata by the state and county in proportion to the amount of poll tax received by each, and this shall include his compensation for administering oaths, furnishing certified lists of qualified voters in election precincts for use in all general elections and primary conventions, when desired, and for all duties required of him under this title: Provided, that collectors *whose salaries are fixed by what is known as the fee bill, shall receive ten cents for each poll tax receipt* and certificate of exemption issued by him, and such fees shall be ex officio and not accountable under said fee bill." General Laws 1st Called Session, 29th Leg., p. 557.

While the court was called upon in the above case to construe a different act of the Legislature, the real controversy was, as stated by Justice Greenwood, whether "the relator comes within the meaning of the words *'collectors whose salaries are fixed by what is known as the fee bill'.*" The question now under consideration was necessarily involved and determined in that case. The immediate question the court was called upon to decide was whether the tax collector was entitled to ten or fifteen cents for issuing poll tax receipts. He was entitled to the one if he was an officer whose salary was fixed by the fee bill and to the other if his salary was not fixed by such bill. If, as a matter of law, the salaries of all tax collectors were fixed by the fee bill, there was no question presented for determination by the court. In this view, the court would have summarily disposed of the case by the simple statement that as the salaries of all tax collectors were fixed by the fee bill, there was no necessity to decide whether the population of counties of less than 25,000 should be determined by the United States census or by the

vote cast at the last presidential election. It was only necessary to determine which of these methods applied as a basis for ascertaining whether the tax collector in that case was one *whose salary was fixed by the fee bill*. It would have been an idle ceremony for the Supreme Court to have elaborately reviewed the provisions of the act for the purpose of deciding a question, the decision of which was unnecessary and meant nothing.

It has been repeatedly held that a proposition assumed or decided in order to establish another proposition which expresses the conclusion of the court is as effectually passed upon and settled as the very question directly decided. Warren School District v. Stocker, 42 N. J. L., 115; Buchner v. Railway Co., 19 N. W., 57; Brown v. Railway Co., 44 L. R. A., 586. In the case of Brown v. Railway Co., supra, the rule is well stated as follows:

"It is a mistaken opinion that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case, and all the questions presented and considered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved. School Dist. No. 38 v. Stocker, 42 N. J. L., 115. The judgment is authority upon all points assumed to be within the issues which the record shows the court *deliberately considered and decided in reaching it*."

To the same effect are the cases of South Bend Chilled Plow Co. v. Cribb, 81 N. W., 675; Waters v. Land Co., 62 So., 75; Williams v. Railway Co., 79 S. W., 1168; Scovill Mfg. Co. v. Cassidy, 114 N. W., 185; Sprague v. Railway Co., 106 Am. St. Rep., 998.

Under this well established rule, when our Supreme Court decided which method was proper in determining whether relator's salary was fixed by the fee bill, the assumption upon which such decision was based was just as effectually decided. Such assumption was necessary in order to decide the main question presented. Without it there was no question presented for decision. In no sense, therefore, can it be said that the court's determination of the question here involved was dicta.

Legislative interpretation of an act is entitled to be given weight and where it is an interpretation made by the very Legislature which passed the act in question, it should be of controlling effect. Slaughter v. Yoakum County, 109 Texas, 42, 195 S. W., 1129; State v. Houston Oil Co., 194 S. W., 422; Stockdale v. Atlantic Ins. Co., 20 Wall., 323, 22 U. S. (L. Ed.) 348; Murdock v.

Memphis, 20 Wall., 590, 22 U. S. (L. Ed.) 429; United States v. Claffin, 97 U. S., 546, 24 L. Ed., 1082.

The enactment by the Legislature of the Act of 1905 which was construed by the Supreme Court in the Moorman case was a clear legislative interpretation that Section 17 of the Act of 1897 exempted certain officers from the provision which fixed maximum salaries. That act is absolutely meaningless under any other theory than that the act of 1897 did not fix the salary of tax collectors in counties of less than 15,000 population. For the Legislature to pass a bill fixing one compensation for tax collectors in issuing poll tax receipts whose salaries were fixed by the fee bill and a different compensation for those whose salaries were not fixed by the fee bill, when such bill fixed the salaries of all tax collectors, would be a farcical proceeding. The act of the Legislature in passing this bill was a distinct recognition that Section 17 of the Act of 1897 fixed the salary of tax collectors in certain counties and omitted to do so in others.

Again, the very Legislature which passed the act now under consideration, and in the very act itself, has interpreted the meaning and purpose of Article 3898. It will be noted that Article 3897, providing for the making of sworn monthly reports, requires the officer to give an itemized list of all expenses incurred, does not embrace all officers named under the fee bill, for the language is, *"each officer whose fees are affected by the provisions of this act."* This provision is very significant. It is a legislative interpretation of its own act to the effect that there were some officers whose fees were not affected thereby. Manifestly, every officer whose salary was fixed by its terms was affected thereby. There is no provision in the act which exempts any officer from the maximum salary provision unless Article 3898 be given that effect.

If the act in question be construed wholly independent of the judicial, executive, legislative, and practical construction which it has received for nearly a quarter of a century, still, the conclusion is inescapable that the Legislature intended 'to exempt certain officers from the maximum salary provision. It is utterly inconceivable that the Legislature intended that officers in counties of less population than those named in the statute should turn over to the county all fees collected by them in excess of the amounts named in the fee bill. If such was the purpose of the Legislature, why should it take away the only effective means provided for determining the amount of such fees that should be paid by the officers affected? The

statutes of this state may be searched in vain for a single provision, in effect from 1897 to the present time, that directly or indirectly requires officers in counties of less population than those named in Article 3898 to keep any record whatever or make any character of report of the fees *collected* by them as a basis for settlement with the county for excess fees due it. It is argued that this data is obtainable in behalf of the various counties affected by virtue of the provision of Article 3913. It is only necessary to quote this article to disclose the fallacy of this contention. It reads:

"Each officer entitled by law to charge fees for services shall keep a fee book and shall enter therein all fees *charged* for services rendered; which fee book shall, at all times, be subject to the inspection of any person wishing to see the amount of fees therein charged."

This statute was not a part of the fee bill enacted in 1897, but was passed many years prior thereto. It was enacted at a time when all county officers were permitted to retain all of the fees collected by them, hence it could not have been intended to be used as a basis for settlements by the counties with their officers. The language of this statute shows that it was clearly designed to prevent public officers from practicing extortion in charging fees, as it requires the record of the fees charged to be at all times subject to the inspection "of *any person* wishing to see the amount of fees therein charged."

Even if this article of the statute had been enacted as part of the Act of 1897, it could not have been used in any effective way by counties in making settlements with officers on excess fees, for the reason that its terms do not require the officers to keep a record showing the amount of fees *collected,* but only the fees *charged.* The fees charged by an officer and the fees collected by him are two different things. The record showing the amount of fees charged by an officer would be of little practical assistance to a county in making a settlement with the officer for the excess fees collected. As a matter of fact, officers like county attorneys, county judges, county and district clerks, many times do not collect a large proportion of the fees charged in the year in which they are charged, as the collection of such fees is dependent upon the final determination of civil and criminal cases, and the payment of the costs therein.

The Act of 1897 provided a very effective means of protecting and safeguarding the counties in regard to excess fees due it by their officers. Such officers were required to keep a record of all fees *charged* and *collected* and to make annually a sworn report thereof

to the district court. The rights of counties were further safe-guarded by provision for the grand jury to annually investigate the correctness of these reports. The officer in making his report and settling with the county for the excess fees that might be due the county was subject to the pains and penalties of perjury if he should fail to honestly report the fees collected by him. We think it reasonable and fair to assume that if the Legislature had intended in the original enactment of the fee bill, and in the amendments subsequently made thereto, that all county officers should be under the maximum salary provision and be required to account for fees in excess of the salaries named therein, it would not have removed all of these salutary provisions designed to safeguard and protect the counties affected thereby, nor would it have destroyed the effective method it had provided for the correct determination of the amount of excess fees that should be paid over to the county by its officers.

Another legislative interpretation of the meaning of the provision in question is found in Article 3889, which deals with the amount of excess fees certain officers are allowed to retain. It permits officers in counties with a population of from 25,000 to 38,000 to retain excess fees up to a certain amount and where the population exceeds 38,000, to retain a different percentage, but it makes no provision whatever in regard to the amount of the excess that may be retained by any officer in counties having less population than 25,000. It is strangely silent in regard to officers in such counties. There is nothing unusual about this if the act be given the construction that officers in such counties were not required to account for any excess fees, but if the opposite construction is given, it seems passing strange why such officers were not allowed to retain any percentage whatever of the excess fees. It is a well-known fact that one of the purposes of allowing officers to retain a portion of excess fees collected was to stimulate the officer in the collection of such fees. Under such a policy, the officer has a greater incentive to push the collection of delinquent fees, a large portion of which belongs to the county.

Another clear cut legislative interpretation of Art. 3898 was given in the enactment which repealed it. The caption of such act shows that its purpose was to fix the amount of fees that might thereafter be retained by the tax assessors *in counties having a population of less than twenty-five thousand*. This legislation was wholly unnecessary if the amount of the fees they were entitled to retain was

already fixed by existing law. The emergency clause discloses the clear intent of the repealing act, wherein it is stated:

"The fact that there is now *no limit as to the amount a county officer in counties having less than twenty-five thousand population may receive in excess fees,* creates an emergency, etc."

The legislature in 1919 having thus construed the effect of Art. 3898 must be held in re-enacting the same in 1923 to have intended that it should operate to exempt officers in counties from the maximum salary provision in counties having the population therein specified.

The further question is presented as to whether the county is entitled to recover against its tax assessor for the portion of 1923 that Stephens county was under the operation of the fee bill, the re-enactment of Art. 3898 having taken effect in June, 1923.

The county's right to recover excess fees from appellee was dependent upon the statute. It provided a means by which the excess fees due the county could be determined. The Act of 1923 repealed these provisions without any saving clause before any reports were required to be made by the tax assessor, hence the county's remedy was taken away.

It has been frequently held that where there is no saving clause provided by the remedial statute, the remedy and the right based thereon are both lost. Pierce v. Watkins, 263 S. W., 905; State of Texas v. Texas & N. O. Ry., 125 S. W., 53; Galveston H. & S. A. v. Anderson, 229 S. W., 998; Goodrich v. Wallis, 143 S. W., 285; Ex Parte McArdle (U. S.) 7 Wall., 506, 19 L. Ed. 265; Norris v. Crocker, 13 How., 429, 14 L. Ed., 210; Sutherland Stat. Const., Sec. 282, p. 544 and Sec. 285, p. 552; Am. & Eng. Ency. of Law, (2nd Ed.) Vol. 6, page 947; Words & Phrases, Vol. 8, p. 7309.

We therefore recommend that the sixth question certified, which, in effect embodies all of the remaining questions, should be answered that the tax assessor of Stephens County, under the record presented, was not indebted to said county in any sum.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. Cureton, Chief Justice.