

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

*Overrules statements in [illegible]-297 A. where conflicts*

June 25, 1963

Hon. William A. Harrison
Commissioner of Insurance
State Board of Insurance
Austin, Texas

Opinion No. C-101

Re: (1) Whether "credit insurance"
in Article 21.07-1, Sec. 1, Par.
(b)(5), T.I.C., refers only to
credit insurance as defined in
Article 3.53, T.I.C.; (2) Whether
agents licensed pursuant to Art.
21.07-1, T.I.C., need obtain an
additional license if they engage in
activities specified in Article 21.07-1,
Sec. 1, Par. (b)(5).

Dear Mr. Harrison:

You have requested our opinion as to the following questions:

1. Does the exception in Art. 21.07-1, Sec. 1, Par. (b)(5) refer
only to the credit insurance defined in Art. 3.53 of the Texas Insurance Code;
or does this exception also embrace insurance not included in the definition
set out in Art. 3.53 (e.g., a policy of insurance sold in connection with a
loan in excess of $1,000.00)?

2. May an insurance agent, licensed under Art. 21.07-1 and
acting exclusively for legal reserve companies, engage in the activities
specified in Art. 21.07-1, Sec. 1, Par. (b)(5) of the Texas Insurance Code
without obtaining an additional license?

In regard to your first question, Article 21.07-1, T.I.C., provides
for the qualification and licensing of agents of legal reserve life insurance
companies authorized to do business in Texas. Section 1 (b)(5) provides that
the term "life insurance agent" as used in this article shall not apply to:

"An agent selling credit life, health and accident
insurance issued exclusively in connection with com-
mercial loan, or acting as agent or solicitor for health
and accident insurance under license issued pursuant
to the provisions of Article 21.14 of the Texas Insur-
ance Code."

Article 3.53, Sec. 1 (B) defines "Credit Life Insurance" and
"Credit Health and Accident Insurance" as follows:

"Credit Life Insurance, " and "Credit Health and
Accident Insurance" mean personal insurance in which
the insured are borrowers of sums of money not ex-
ceeding One Thousand ($1,000.00) Dollars from lenders
who retain an interest in the insurance as security to the
loan, and any other personal insurance written in con-
nection with or as part of such loan transaction. "Credit
Health Insurance" and "Credit Health and Accident Insur-
ance" as used in this article shall never be taken to mean
or refer to any contract insuring performance of any under-
taking or agreement, and are expressly limited in their
coverage to the contingencies of death or loss resulting
from sickness and accident."

Article 3.53 was originally enacted in 1949, Acts 51st Leg., R.S.,
1949, p. 132, ch. 81, and was amended in 1951, Acts 52nd Leg., R.S. 1951,
p. 336, ch. 207.  The statute as amended was included as Article 3.53 of
the Texas Insurance Code, Acts 52nd Leg., R.S. 1951, p. 868, ch. 491.

Article 21.07-1 was enacted in 1955, Acts 54th Leg., R.S. 1955,
p. 621, ch. 213.  These two articles of the Texas Insurance Code are in
reality two separate statutes enacted by different sessions of the Legislature,
and included in the Texas Insurance Code at different sessions.  In answer-
ing your questions it becomes material to ascertain the intent of the Legis-
lature in enacting the provisions of the two different articles.

The intention and meaning of the Legislature is to be ascertained
primarily from the language of the statute read as a whole.  If the statutory
language clearly and distinctly reveals the legislative intent there is no
occasion to look elsewhere.  39 Tex. Jur. 176 § 93 and cases cited therein.

Both the title and language of Article 3.53 manifest a clear legislative intent to regulate Credit Life Insurance and Credit Health and Accident Insurance as defined by that statute.

Article 3.53, Sec. 1 (B)(2) reads as follows:

"The provisions of this article shall apply only to the writing of "Credit Life Insurance" and "Credit Health and Accident Insurance" as defined in this article, both as to "Insurer" and "Insurance Agent" and "Lender Agent" as defined in this article."

Article 3.53, Sec. 14, provides:

"Nothing in this article shall ever be construed to include or affect in any manner group life insurance issued under the provisions of Article 3.50, or any other kind of insurance written by insurance carriers or their insurance agents other than credit life insurance and credit health and accident insurance as defined herein."

It is obvious from these two provisions that the Legislature in Article 3.53 expressly defined the terms "Credit Life Insurance" and "Credit Health and Accident Insurance" for the purposes of that article only and explicitly restricted the use of those terms as defined to that article.

Article 21.07-1, as is noted above, was enacted six years after Article 3.53.  By the well-known rules of statutory construction, it may be properly presumed that the Legislature had knowledge of the existing statutes and the effect thereof when they enacted the later statute.  Cole v. State, 106 Tex. 472, 170 S.W. 1036 (1914); Stephens County v. Hefner, 118 Tex. 397, 16 S.W. 2d 804 (1929); Railroad Commission of Texas v. Texas & New Orleans Ry. Co., 42 S.W. 2d 1091 (Tex. Civ. App., 1931, err. ref.).

Article 21.07-1 relates to the licensing of agents of legal reserve life insurance companies and establishes the qualifications and procedures under which individuals will be licensed as agents for legal reserve life insurance companies.  Sec. 1 (b)(5) of the article quoted above exempts "agents selling credit life, health and accident insurance issued exclusively

in connection with commercial loan. . ." from the licensing provisions of that article. The terms "credit life, health and accident insurance" are not further defined by Article 21.07-1, nor is there any reference to those terms as defined by Article 3.53.

The Legislature when enacting Article 21.07-1 is presumed to have known of Article 3.53, its provisions, and the effect of those provisions. The Legislature in Article 21.07-1 made no attempt to incorporate the earlier statutory definition of credit insurance contained in Article 3.53 into the later statute, nor did they attempt either expressly or impliedly to repeal any of the provisions of Article 3.53 restricting the provisions of that statute solely to that article. The two articles treat two different subjects and were enacted to accomplish two different objects. Article 21.07-1, Sec. 1(b)(5) merely creates a class of persons who for the purposes of that Article are not required to be licensed as insurance agents pursuant to the terms of that article.

In answer to your first question it is our opinion that the credit life, health and accident insurance referred to in Article 21.07-1, Section 1 (b)(5) does not refer only to such credit insurance as is defined in Article 3.53.

Attorney General's Opinion No. WW-297-A, while not considering the question raised herein, contains several general statements to the effect that the credit insurance of Article 21.07-1, Sec. 1 (b)(5) refers solely to credit insurance as defined in Article 3.53, Sec. 1 (B)(1). We hereby overrule such statements in that opinion which conflict with the opinion expressed herein.

In regard to your second question, Article 21.07-1 is the statute regulating the qualifications and licensing procedures for agents within the scope of that article, who represent legal reserve life insurance companies authorized to do business in Texas. That article by its express terms repeals provisions of Article 21.07, Texas Insurance Code, to the extent only as applicable to such agents.

Article 21.07-1, Sec. 1 (b) defines "life insurance agents" for the purposes of that article as "any person who is an authorized agent of a legal reserve life insurance company, and any person who is a sub-agent of such agent, who acts as such in the solicitation of, negotiation for, or procurement of, or collection of premium on, an insurance or annuity contract with a

legal reserve life insurance company.  Article 21.07-1, Sec. 1 (d) defines "insurance or annuity contract" as "a contract or policy of life, health or accident (including hospitalization) insurance, or an annuity contract, issued by any legal reserve company or insurer engaged in the business of writing life, health or accident (including hospitalization) insurance, or an annuity contract." Article 21.07-1 makes no attempt to define the authority of an agent licensed thereunder except as stated above.  Such an agent must be "authorized" by the legal reserve life insurance company to act in its behalf in the negotiation of insurance contracts.  It is clear that under these statutory provisions the agent licensed pursuant to the provisions of that article may write whatever type of insurance business the company is permitted to write.  The authority of the agent is co-extensive in that respect with that of the company which he represents.

Article 21.07-1, Sec. 1 (b)(5) excludes from the definition of "life insurance agent," for the purposes of Article 21.07-1, "an agent selling credit life, health and accident insurance issued exclusively in connection with commercial loan. . . ." This exclusion merely provides that a person acting as an agent for a legal reserve life insurance company in that particular capacity need not be licensed under the provisions of that article.  Of course, if such an agent acting on behalf of a legal reserve life insurance company be simultaneously engaged in other activities not exempted under Sec. 1 (b)(5) or other statutory exemptions of that article, he must obtain the required license under Article 21.07-1.

Article 21.01, T.I.C., requires that all persons be licensed by the State Board of Insurance if they act as agents or otherwise and aid in the transaction of the business of insurance within this State.  Persons licensed pursuant to Article 21.07-1 are licensed as agents of Legal Reserve Life Insurance Companies, and have a license to act as agents as required by Article 21.01.  No provision of Article 21.07-1 seeks to limit the authority of agents to act upon behalf of a legal reserve life insurance company once the requisite license is obtained pursuant to that article.

In answer to your second question, it is our opinion that an insurance agent licensed under Article 21.07-1 and acting exclusively for legal reserve companies may engage in the activities specified in Article 21.07-1, Sec. 1 (b)(5) of the Texas Insurance Code without obtaining an additional license.

## SUMMARY

The phrase, "credit life, health and accident insurance issued exclusively in connection with commercial loan. . .", in Article 21.07-1, Sec. 1 (b)(5), T. I. C., does not refer only to credit insurance as defined in Article 3.53, T. I. C.

An insurance agent licensed pursuant to Article 21.07-1 need not obtain an additional license in order to engage in the activities specified in Art. 21.07-1, Sec. 1 (b) (5).

Yours truly,

WAGGONER CARR
Attorney General of Texas

By _____
Joe R. Long
Assistant Attorney General

JRL:lmc

APPROVED:

H. Grady Chandler, Chairman
V. F. Taylor
W. O. Schultz
James Stofer
John Reeves

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone