Betty Showers BROWN et al., Appellants,

v.

Mary Elizabeth Showers SCHERCK et al.,
Appellees.

No. 69.

Court of Civil Appeals of Texas.

Corpus Christi.

July 29, 1965.

Rehearing Denied Aug. 26, 1965.

Smith & Lehmann, J. Edwin Smith,
Houston, for appellants.

Strickland, Winkler, Hall & Mills, Harry
L. Hall, Mission, for appellees.

SHARPE, Justice.

This suit was instituted by appellants, who are the daughters of E. A. Showers, deceased, joined by their husbands, respectively, against appellees as trustees of a testamentary trust created by the will of their father, and was brought under the Uniform Declaratory Judgment Act (Art. 2524–1, Vernon's Ann.Tex.Civ.St., Sections 2 and 4), and pursuant to the provisions of the Texas Trust Act (Articles 7425b–1—7425b–47, particularly Art. 7425b–24, V.A. T.S.), for construction of said will and declaratory judgment that said testamentary trust terminated when Nancy Showers Slaughter, the youngest daughter, became twenty-one years of age on December 28, 1957; for distribution of the corpus of the trust if the Court held that the trust had terminated on said date; and, if not so terminated, for declaratory judgment determining such termination date. The minor children of appellants, who are contingent beneficiaries, were also named as defendants in the suit, and a guardian ad litem was duly appointed to represent them.

This suit was numbered 609,373, in the 113th Judicial District Court of Harris County, Texas, and was filed on January 3, 1963. Appellees defended primarily on the ground that the final judgment rendered in the same court by the same judge on April 25, 1962, in Cause No. 589,943, styled Ann Showers Butler, et al. v. Mary Elizabeth Showers Scherck, et al., and in which all parties to the instant suit were also parties, was res adjudicata and conclusively established that the testamentary trust did not terminate on December 28, 1957, and was in existence as an active trust at the time of such prior judgment. Various other defenses were urged by appellees in the alternative, and the same will be discussed more fully in subsequent portions of this opinion.

The case was tried to the Court without a jury. Aside from brief oral testimony given by the three appellant daughters of E. A. Showers, the three testamentary trustees and an accountant for the trustees, all evidence was documentary in character. The trial court ordered that the Stipulation of Facts and Authenticity of Documents with Exhibits attached as well as other Exhibits be transmitted in the original to the appellate court as a part of the record in this case. Such exhibits include all of the court papers in the prior suit, and are stipulated to be the only pleadings raising issues of fact or of law in said suit.

The trial court sustained appellees' plea of res judicata; determined that the testamentary trust did not terminate on December 28, 1957; determined the date upon which it will terminate; made provisions for protection of the interests of the minor involved; and directed the manner in which the assets of the trust should be distributed upon termination so as to effect a provision for equalization contained in Paragraph VI(d) of the Will.

The record reflects that E. A. Showers died on October 22, 1946. He was survived by his widow, Mary Elizabeth Showers, now Mary Elizabeth Scherck, and their three daughters Ann, Betty and Nancy, whose married names are Ann Showers Butler, Betty Showers Brown and Nancy Showers Slaughter. Prior to the execution of his will on April 27, 1943, five inter vivos trusts were executed. On April 1, 1937, E. A. Showers, joined by Mary Elizabeth Showers, executed a trust indenture known as the E. A. Showers Trust for the benefit of Ann and Betty, the two older daughters. On December 29th and 30th, 1938, Showers, joined pro-forma by his said wife executed two separate trust agreements for the benefit of Nancy, the youngest daughter, identified as the Nancy Showers Trust No. 1 and No. 1–A, and on said dates, Mrs. Showers, joined pro-forma by her husband, also executed two additional trust indentures for Nancy, known as the Nancy Showers Trust No. 2 and No. 2–A, making a total of five inter vivos trusts. Provisions were

made in all of said inter vivos trusts as well as the testamentary trust that should any daughter die before termination thereof and distribution of the corpus, leaving children surviving, that such children would take, per stirpes, the share of their deceased mother had she survived. Each of the daughters of E. A. Showers, deceased, had minor children who were made defendants in the suit and their exact relationship was found by the court.

Ann Showers Butler became 35 years of age on July 24, 1963. Betty Showers Brown will become 35 years of age on November 10, 1965, on which date the E. A. Showers Trust, for the benefit of Ann and Betty will terminate. Nancy reached 21 years of age on December 28, 1957 and will have her 35th birthday on December 28, 1971.

The will of E. A. Showers, deceased, was duly probated. His widow since remarriage, Mary Elizabeth Showers Scherck, elected not to take under said will, but rather to take her one-half of the community property owned by her and E. A. Showers at the time of his death.

The same persons are trustees of the testamentary trust and the five inter vivos trusts.

Appellants urge seven points of error in substance as follows: (1) The trial court having found that the proper construction of the Will was that the testamentary trust terminated on December 28, 1957, title to appellants' interest in the trust assets vested unconditionally in them on that date, (2) Since said date the trustees have functioned as trustees of a "passive" or "dry" trust, and the trust purposes having been accomplished, appellants have a right to demand immediate delivery of the trust assets, (3) the prior suit was not res judicata on the termination date of the trust, since the trustees had not wound it up between December 28, 1957 and the time of institution of the prior suit and had the obligation to function according

to the terms of the trust until it is finally wound up, (4) the prior judgment was not res judicata on the termination date of the trust because a declaratory judgment is res judicata only as to matters declared by the judgment and not on matters which might have been declared, (5) the trial court rules contrary to the principle that a will should be construed to vest title at the earliest possible time by setting a termination date of the testamentary trust as December 28, 1971, (6) a proper construction of the will requires setting a termination date of the testamentary trust earlier than December 28, 1971, and (7) as the trial court has found that the proper construction of the will is that the termination date of the trust is December 28, 1957, the 21st birthday of Nancy Showers Slaughter, the trustees in their fiduciary relation to the beneficiaries cannot rely upon a technical plea of res judicata on issues that were not affirmatively in issue or affirmatively declared.

We have concluded that appellants' points should be overruled and the judgment of the trial court affirmed.

Appellant's contentions involve several of the trial court's conclusions of fact and of law.

Conclusion of fact XXII reads as follows:

"The Court is of the opinion that the Will of E. A. Showers, deceased, is ambiguous, and that a proper construction of the date of termination of the Testamentary Trust established and created by such Will, were it not for the provisions of the final judgment in Cause No. 589,943, would be December 28, 1957, the date upon which Nancy Showers Slaughter attained the age of 21 years.

"From December 28, 1957, until Cause No. 589,943 was filed by the present plaintiffs a controversy and dispute existed between the plaintiffs and trus-

tees as to the date upon which the Testamentary Trust would terminate, plaintiffs contending that the trust terminated when Nancy Showers Slaughter became 21 years of age on December 28, 1957, and the Trustees construing the Will of E. A. Showers, deceased, to provide for termination of the Trust when Nancy Showers Slaughter became 35 years of age, provided she was then living and such controversy has existed until the present time.

"The pleadings of plaintiffs in Cause No. 589,943, and the relief sought by them in such cause were premised upon the then existence of the Testamentary Trust. The pleadings and relief sought in such cause by the Trustees as defendants and cross-plaintiffs was likewise premised upon the continued existence of the Testamentary Trust. The judgment in said cause was premised upon the continued existence of the Trust and the relief granted thereby would have been improper if the Trust was not an existing Trust and had already terminated on December 28, 1957. Said judgment constitutes a binding adjudication and determination that the testamentary trust did not terminate on December 28, 1957.

Conclusion of Law Number One reads as follows:

"The final judgment dated April 25, 1962, in Cause No. 589,943, Ann Showers Butler, et al v. Elizabeth Showers Scherck, et al, in the District Court of Harris County, Texas, 113th Judicial District, determined and adjudicated that the testamentary trust had not terminated and was still in existence and the rights of the beneficiaries of said trust and the duties and responsibilities of the trustees thereof, together with the matters that should be considered by the trustees in the continued administration of the trust during the existence of the same were likewise

declared and adjudicated and the contentions of plaintiffs that said testamentary trust terminated on December 28, 1957, when Nancy Showers Slaughter became 21 years of age was adjudicated and determined by said judgment contrary to their present contentions in this cause and said judgment binds all parties to this cause and is res adjudicata of the contentions of plaintiffs.

Paragraph (5) of the final judgment provides as follows:

"All of the parties to the present cause were parties to Cause No. 589,943 on the docket of the 113th District Court of Harris County, Texas, entitled Ann Showers Butler, et al v. Elizabeth Showers Scherck, et al, defendants. Final judgment was entered in said cause on April 25, 1962. No appeal from such judgment was perfected by any party thereto and the same constitutes a final judgment binding upon all parties to this cause. Said Judgment determined and adjudicated that the testamentary trust had not terminated and was still in existence and the rights of the beneficiaries of said trust and the duties and responsibilities of the trustees thereof, together with the matters that should be considered by the trustees in the continued administration of said trust during the existence of the same were likewise declared and adjudicated and the contentions of plaintiffs that said testamentary trust terminated on December 28, 1957, when Nancy Showers Slaughter became 21 years of age was adjudicated and determined by said judgment contrary to their present contentions in this cause and said judgment is res adjudicata of such contentions and it is the judgment of this Court that said testamentary trust did not terminate on December 28, 1957."

Cause No. 589,943, filed by appellants in 1962, was also brought under the Declaratory Judgment Act and the Texas Trust

Act seeking a construction of the Will and the Testamentary Trust created thereby to the effect that the trustees had authority and discretion to increase the monthly payments to the beneficiaries, the three daughters of E. A. Showers, deceased; that future payments to the beneficiaries be based upon the reasonable discretion of the trustees in view of the circumstances and needs of each of the beneficiaries; and that the trustees be directed with respect to the matters to be considered by them in the exercise of their discretion, and for other appropriate findings and relief. By way of trial amendment in said prior cause, the trustees specifically plead and brought to the attention of the trial court Paragraph VI(d) of the Will, reading as follows:

"I have heretofore executed a trust agreement establishing a trust for the use and benefit of two of my daughters, wherein I have provided that these two daughters shall share equally in the income from said trust estate and in the corpus of said trust estate upon its dissolution and termination. I have also executed trust agreements establishing trusts for the use and benefit of my youngest daughter, Nancy Showers. If for any reason, upon final distribution of said trust estate or trust estates, either of my three daughters shall receive more than either of the others, my Trustees under this will shall make such distribution of the income and corpus of my estate under this will as will equalize the distributive shares of my three daughters shall receive an equal share in said trust estate, or trust estates, and in my estate taken and considered as a whole."

The five inter vivos trusts heretofore mentioned were the only trusts created or established by E. A. Showers or his wife, Mary Elizabeth Showers during his lifetime, and are necessarily the trusts referred to in Paragraph VI(d) of the Will. Conclusions of Fact XXIV and XXV made the trial court in such connection are as follows:

"XXIV

"In the trust indenture of the 'E. A. SHOWERS TRUST' the donors expressly provided that such trust will terminate on November 10, 1965, which date is the 35th birthday of Betty Showers Brown, or on the date of the death of Betty Showers Brown, should she die prior to reaching her 35th birthdate, or the termination date decided upon by the trustees of such trust, under the provisions of paragraph VII of the trust indenture, should the trustee elect to act under said paragraph VII, whichever date is the earliest.

"XXV

"In the 'NANCY SHOWERS TRUSTS NOS. 1, 1–A, 2 and 2–A,' the trust indenture expressly provides that each and all of such trusts will terminate on December 28, 1971, which date is the 35th birthdate of Nancy Showers Slaughter, or on the date of her death, should she die prior to reaching her 35th birthdate or the termination date set by the trustees of said trusts under the provisions of paragraph VII of each of said trust indentures should the trustees elect to act under the provisions of said paragraph VII, whichever date is the earliest."

The final judgment in said Cause No. 589,943, provided, among other things, as follows:

"11

"That a necessity exists for a proper construction of certain terms and provisions of Decedent's Will, and the rights and powers which have been and may be now or hereafter validly exercised thereunder and in order to construe said provisions of the Will, the Court has determined the matters propounded to it in the pleadings of

the parties heretofore filed as well as upon the trial of this Cause, as follows:

\* \* \* \* \* \*

"2. The amount of monthly payments to be made to Plaintiff and Cross-Defendant Daughters, as beneficiaries of the Trust, are not limited to the $300.00 per month expressed in Paragraph X of the Will.

"3. That hereafter during the existence of the Trust Defendant and Cross-Plaintiff Trustees shall pay, first from the net income of the Trust, and if and to the extent that such income is insufficient, from the principal of the Trust, such amounts as may be necessary in the discretion of the Trustees to provide for the needs of the Plaintiff and Cross-Defendant Daughters, as beneficiaries of the Trust; provided that, in view of the needs of the Plaintiff and Cross-Defendant Daughters, as beneficiaries of the Trust, as shown upon the trial hereof (considering pertinent facts and circumstances in regard to the respective situations of such beneficiaries and the Trust), in order to fulfill the intent of the Decedent, as set forth in the Will, such Trustees shall hereafter during the existence of the Trust make minimum payments of the amounts specified as follows:

"(a) In view of the needs of Plaintiff and Cross-Defendant Daughters, as beneficiaries of the Trust, as reflected by the circumstances surrounding the economic conditions of each such respective beneficiary and the Trust, as shown by the evidence herein, it would be proper, and the Defendant and Cross-Plaintiff Trustees are ORDERED to pay each Plaintiff and Cross-Defendant Daughter, as a beneficiary of the Trust, in order to fulfill the intent of the Decedent as set forth in the Will, a total of $2,000.00 for each month of the current fiscal year of the Trust, being the months of May, 1961, through April, 1962, instead of only $300.00 per month.

"(b) In view of the needs of Plaintiff and Cross-Defendant Daughters, as beneficiaries of the Trust, as reflected by the circumstances surrounding the economic conditions of each such respective beneficiary and the Trust, as shown by the evidence herein, it would be proper to pay each Plaintiff and Cross-Defendant Daughter, as a beneficiary of the Trust, in order to fulfill the intent of the Decedent as set forth in the Will, the sum of $2,000.00 per month, commencing with the month of May, 1962, and continuing monthly thereafter with respect to each such beneficiary so long as there are no subficiary so long as there are no substantial changes in the circumstances of any Plaintiff and Cross-Defendant beneficiary of the Trust, or of the Trust, or of both, and the Trustees are ORDERED to so make such payments in the absence of any such substantial change." (S.Exh. "P" p. 4–7)

It was stipulated that since the entry of judgment in the prior suit on April 25, 1962, each of the three appellants who are daughters of E. A. Showers, deceased, have been paid the sum of $2,000.00 per month from the testamentary trust as provided by said judgment, and that they each have been paid since said date the aggregate sum of $3,500.00 from all of the trusts.

■ Much of appellants' argument is based on the premise that the trial court found that the testamentary trust terminated on December 28, 1957, when Nancy Showers Slaughter became 21 years of age. It is apparent from the conclusions of fact and of law made by the trial court that it was not so held. What the trial judge did hold was that he was precluded from so finding or concluding because the judgment rendered in 1962 in the prior suit between

the same parties was binding and conclusive upon them and established that the testamentary trust still existed on April 25, 1962, and that the final judgment rendered on said date was res adjudicata against appellants as to the contention being urged by them in the instant case.

It is clear that the judgment in the prior cause, rendered on April 25, 1962 was necessarily premised upon the continued existence of the testamentary trust. The relief granted by said judgment would have been improper if the trust had terminated on December 28, 1957 and if it was not an existing trust at the time of said suit and judgment. This was expressly recognized by the trial court in the instant case by his findings and conclusions to the effect that the pleadings and relief sought by all parties in the prior suit were premised upon the then existence and continued existence of the trust.

If the testamentary trust had terminated on December 28, 1957, or prior to the filing of the prior suit in 1962, the three daughters of E. A. Showers, deceased, would have been entitled to demand that the assets of the trust be delivered to them; and, in such event, the trustees would not have been vested with discretion or power, but would have been required to comply with such demand and wind up the trust. It is further apparent that if the trust had terminated on December 28, 1957 there would have been no necessity for the trial court in 1962 in the prior suit to provide for monthly payments to be made by the trustees to the daughters in the future on the basis of certain factors which they were instructed to take into consideration.

In Williams v. Jackson, 138 Tex. 352, 159 S.W.2d 99, 101 (1941), our Supreme Court, speaking through Chief Justice Alexander, held as follows:

"In 30 American Jurisprudence p. 930, it is said: 'Under this rule, if the record of the former trial shows that the judgment could not have been ren-dered without deciding a particular matter, it will be considered as having settled that matter as to all future actions between the parties, and if a judgment necessarily presupposes certain premises, they are as conclusive as the judgment itself'."

The rule enunciated in Williams v. Jackson, supra, has been the law of this State since the early decision of the Supreme Court in the case of Tadlock v. Eccles, 20 Tex. 782 (1858), wherein the court held:

"There is no better settled principle, than that the judgment or decree of a Court of competent jurisdiction, directly upon the point, or necessarily involving the decision of the question, is conclusive between the parties and their privies, upon the same matter coming directly in question in a collateral action, in the same or another Court of concurrent jurisdiction. It can make no difference in the application of this principle, what may have been the subject matter of the judgment, provided it be one of which the Court rendering it had jurisdiction. If the Court rendering the judgment had jurisdiction of the subject matter and the parties, its decision is conclusive until reversed on appeal or annulled by a proceeding for that purpose."

In the case of Stephens County v. Hefner, 118 Tex. 397, 16 S.W.2d 804, 807, (1929), our Supreme Court also stated the applicable rule as follows:

"It has been repeatedly held that a proposition assumed or decided in order to establish another proposition which expresses the conclusion of the court is as effectually passed upon and settled as the very question directly decided. Warren School District [No. 28] v. Stocker, 42 N.J.L. 115; Buchner v. Chicago, M. & N. W. Ry. Co., 60 Wis. 264, 19 N.W. 57; Brown v. Chicago & N. W. R. Co., 102 Wis. 137, 77 N.W. 748, 78 N.W. 771, 44 L.R.A. 586. In the case of Brown v. Chicago

& N. W. R. Co., supra, the rule is well stated as follows: 'It is a mistaken opinion that nothing is decided in a case except the result arrived at. All the propositions assumed by the court to be within the case and all the questions presented and considered, and deliberately decided by the court, leading up to the final conclusion reached, are as effectually passed upon as the ultimate questions solved. School Dist. No. 38 [28] v. Stocker, 42 N.J.Law, 115. The judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it."

See also Kirby Lbr. Corp. v. Southern Lbr. Co., 145 Tex. 151, 196 S.W.2d 387, 169 A.L.R. 174 (1946), and City of Lubbock v. Stubbs, 160 Tex. 111, 327 S.W.2d 411 (1959), to the same effect as the above-cited cases.

From the foregoing discussion it is apparent that appellants in the prior suit filed in 1962 sought and obtained a judgment determining their rights and the legal relations between themselves and the appellee Trustees during the continued existence of the Testamentary Trust. In said prior suit appellants also obtained coercive relief as to the manner in which the Trustees would exercise discretion and control during the continued existence of the Trust. The record establishes that in the prior suit the parties and the trial court were dealing with the trust on the basis that it was active and had not terminated at the date of judgment on April 25, 1962, and which was to continue thereafter. The judgment so rendered did not determine the date upon which the Trust would terminate but it did adjudicate and establish that it was in existence as an active trust at that time and had not theretofore terminated. The daughters of E. A. Showers, deceased, the beneficiaries under the said Trusts, each testified in this case that she was aware that the controversy and dispute between the beneficiaries and

the trustees concerning the date upon which the Testamentary Trust would terminate had existed for some time prior to filing of the 1962 suit.

The trial court correctly sustained appellees' plea of res judicata and properly held that appellants were bound by the prior judgment. The findings, conclusions and judgment of the trial court in the instant case correctly hold and establish that the Testamentary Trust created by the Will of E. A. Showers, deceased, did not terminate on December 28, 1957, as is here contended by appellants.

By appellants' fourth point, the contention is made that a declaratory judgment is res judicata only as to matters declared by the judgment and not as to matters that might have been declared, and, therefore, the prior judgment was not res judicata on the termination date of the trust. Although appellees contend that the prior judgment was res judicata as to the continued existence of the trust and that it did not terminate on December 28, 1957, they agree that such prior judgment was not res judicata on the actual termination date of the testamentary trust. The present judgment determined the latter issue.

Appellant's reliance upon the case of Cooke v. Gaidry, 309 Ky. 727, 218 S.W.2d 960, 10 A.L.R.2d 778 (1949), is misplaced. The decision referred to followed an earlier appeal of the case reported in 301 Ky. 216, 191 S.W.2d 390 (1945). The opinion in the later appeal reflects that no specific relief was requested until after the mandate was filed in the trial court following the first appeal. The second opinion also quotes a section of the Kentucky Code of Civil Practice (Declaratory Judgment Act, Section 639a–4) which is similar to, but not in the exact wording of Section 8, Article 2524–1, V.A.T.S. (Uniform Declaratory Judgments Act), providing for further relief based upon a declaratory judgment. Appellants particularly rely upon the fol-

lowing portion of the second opinion in Cooke v. Gaidry as follows:

"But appellees insist that they are entitled to have the judgment affirmed because the Court should have sustained their demurrer to the petition for further relief and to have it dismissed. The basis of this argument is that it was the duty of appellant in the original declaratory judgment action to seek all the relief to which he was entitled and not try the case piecemeal; and since appellant in his answer to the petition under the declaratory judgment action could have obtained the relief he now seeks, the former judgment is conclusive under the doctrine of res adjudicata or estoppel in law. Generally a former judgment is conclusive not only of all matters actually adjudicated thereby, but in addition, as to all matters which could have been presented for adjudication in the original action. But suits for declaratory judgments do not fall within this rule. The Declaratory Judgment Act itself provides in Section 639a—4 of the Civil Code of Practice:

'Further relief, based on a declaratory judgment, order or decree, may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief, either in the same proceeding wherein the declaratory judgment, order or decree, was entered, or, in an independent action.'"

In Cooke v. Gaidry, supra, it thus appears that the second case involved additional and specific relief not theretofore sought. The second action was not brought to obtain a declaration of the status or relationship of the parties in a different manner than was determined in the prior proceeding, as appellants seek to do in the instant case.

All we need to hold here is that the doctrine of res judicata does apply to matters which the trial court was required to determine in order to render the judgment in the prior suit. In this case, as we have heretofore pointed out, the judgment in the prior suit was necessarily premised upon the continued existence of the testamentary trust after December 28, 1957.

■ The foregoing discussion in part disposes of appellants' seventh point, which in effect contends that the trustees in their fiduciary relation to the beneficiaries cannot rely upon a technical plea of res judicata on issues that were not affirmatively in issue or affirmatively declared, since the trial court has decreed that the proper construction of the will is that its termination date is December 28, 1957. Of course, appellants cannot properly rely upon the last portion of such contention because such issue, on account of res judicata, has been established against them. In addition, there is no reason why appellees are precluded from relying upon a plea of res judicata on the ground that the prior judgment was binding upon appellants against their present contention as to such termination date. It is the duty of testamentary trustees to carry out the instructions of the will. McMullen v. Sims, 37 S.W.2d 141 (Tex.Comm.App.1931, holdings approved). The record herein establishes that the trustees over a long period of time before filing of the prior suit, consistently took the position that paragraph VI(d) of the testamentary trust fixed its termination date as that upon which the last of the inter vivos trusts would terminate, so that equalization could be accomplished out of the assets of the testamentary trust. Appellants brought about the adjudications in the prior suit and the judgment therein became final without appeal or other action to set it aside. Appellants are bound by their conduct and they cannot be heard in the present proceeding to take an inconsistent position and secure a decision that the judgment in the prior suit was wrong and that the testamentary trust had theretofore terminated. See Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269 (1929).

It is also true that the trustees owe a duty to protect the interest of the minor contingent beneficiaries of the trusts. The general rule is stated in 90 C.J.S. Trusts § 247, page 235, as follows:

"Where there are several beneficiaries, the trustee owes the same fiduciary duty to all of them to protect their respective interests, without partiality or favor to some beneficiaries at the expense of the others. So a trustee owes the same fiduciary duty to a contingent beneficiary as to one with a vested interest in so far as necessary for the protection of the rights of the contingent beneficiary in the trust property; and a trustee is bound in the absence of instructions to the contrary to administer the trust with an eye to the remainder interest as well as to the interest of the life tenant, and he cannot slight one interest for the benefit of the other."

 The trustees herein are not required to recognize an agreement of the adult appellant beneficiaries to compel termination of the trust where the result would be the destruction of the rights and interests of the contingent minor remaindermen and where such action would be contrary to the express provisions of the will. Restatement of the Law of Trusts, Second Edition, Sections 337 and 340.

Appellants' point seven is overruled.

 By their point five appellants contend that by setting the termination date of the testamentary trust as December 28, 1971, the trial court rules contrary to the principle that a will should be construed to vest title at the earliest possible time. By their point six appellants contend that even if the plea of res judicata be binding a proper construction of the will requires setting a termination date of the testamentary trust earlier than December 28, 1971, the 35th birthday of Nancy Showers Slaughter, youngest of the three daughters.

The provisions of the judgment relating to the time and manner of termination of the testamentary trust as provided in Paragraph VI(d) of the will are set out in Paragraphs 6 and 7 thereof, as follows:

"(6) The Court is further of the opinion and finds and hereby DECREES and ADJUDICATES that the testamentary trust will terminate on the date upon which the last of the above mentioned five inter vivos trusts to terminate so terminates and expires as found and decreed in previous paragraphs (3) and (4) of this judgment irrespective of the date of death of Mary Elizabeth Showers Scherck. If any of the adult beneficiaries be dead at such termination date leaving minor children or issue entitled to receive the share which their deceased mother would take if living, such portion shall continue to be held in trust for the benefit of such minor beneficiaries until they are 21 years of age (provided such trust as to such minor beneficiaries is not previously terminated by the trustees pursuant to the discretion vested in the trustees as hereinabove found and adjudicated) but the equalization provision contained in paragraph 6(d) of the Will of E. A. Showers, deceased shall be effected notwithstanding the continuation of the trust for such minor beneficiaries.

"(7) It is further FOUND, ORDERED and DECREED that upon termination of the testamentary trust as provided by paragraph (6) of this judgment, in the event that Ann Showers Butler, Betty Showers Brown and Nancy Showers Slaughter are each living, the trustees of said trust in order to carry out the equalization provisions contained in paragraph 6 (d) of the Will of E. A. Showers, deceased, shall giving due consideration to the character and status of the assets of said trust, as promptly as possible after delivery of the corpus and accumulated income of the last of the

above mentioned five inter vivos trusts to terminate to the beneficiary or beneficiaries entitled to receive the same, render their final account of said testamentary trust and distribute the corpus and accumulated income thereof to Ann Showers Butler, Betty Showers Brown and Nancy Showers Slaughter, and in making such distribution the trustees of such testamentary trust shall distribute an amount to each of said three daughters which, when added to the amount received by Ann Showers Butler and Betty Showers Brown from both income and corpus of the E. A. Showers Trust above described, and by Nancy Showers Slaughter from both income and corpus of the Nancy Shower Trusts Nos. 1, 1-A, 2 and 2-A above described, and the amount received by each of said three daughters from both the income and corpus of the testamentary trust, will result in the receipt by each of said daughters of an equal share of the E. A. Showers Trust, the Nancy Showers Trusts Nos. 1, 1-A, 2 and 2-A and the testamentary trust, taken and considered as a whole, but in the event however, that either Ann Showers Butler, Betty Showers Brown or Nancy Showers Slaughter is not then living, the share to which either of them would be entitled if living as above provided shall continue to be held and administered by said trustees for the benefit of their minor children or issue until the age of 21 years and at such time the share to which any such minor is entitled shall then be paid or delivered to such minor."

Paragraphs 3 and 4 of the findings referred to in the above mentioned paragraph (6) of the judgment are as follows:

"(3) Under the provisions of the E. A. Showers Trust above mentioned the same will terminate on November 10, 1965, which date is the 35th birthdate of Betty Showers Brown, or on the date of the death of Betty Showers Brown, should she die prior to reaching her 35th birthdate, or the termination date decided upon by the trustees of such trust, under the provisions of paragraph VII of the trust indenture, should the trustee elect to act under said Paragraph VII, whichever date is the earliest.

"(4) Under the provisions of the Nancy Showers Trusts Nos. 1, 1-A, 2 and 2-A, each of said trusts will terminate on December 28, 1971, which date is the 35th birthdate of Nancy Showers Slaughter, or on the date of her death, should she die prior to reaching her 35th birthdate or the termination date set by the trustees of said trusts under the provisions of paragraph VII of each of said trust indentures should the trustees elect to act under the provisions of said paragraph VII, whichever date is the earliest."

Paragraph VI(d) of the Will sometimes referred to by the trial court as paragraph 6(d) is repeated here, as follows:

"I have heretofore executed a trust agreement establishing a trust for the use and benefit of two of my daughters, wherein I have provided that these two daughters shall share equally in the income from said trust estate and in the corpus of said trust estate upon its dissolution and termination. I have also executed trust agreements establishing trusts for the use and benefit of my youngest daughter, Nancy Showers. If for any reason, upon final distribution of said trust estate or trust estates, either of my three daughters shall receive more than either of the others, my Trustees under this will shall make such distribution of the income and corpus of my estate under this will as will equalize the distributive shares of my three daughters in the combined estates, so that each of my three daughters shall receive an

equal share in said trust estate, or trust estates, and in my estate taken and considered whole."

The record reflects that on May 31st, 1963, the three appellant daughters of E. A. Showers, deceased, joined pro forma by their respective husbands, entered into a written "Agreement for Equalization" whereby, among other things, they attempted to provide as between themselves "that the equalization provision under the terms of the said testamentary trust be settled to the mutual advantage of the said three beneficiaries" on the premise that the testamentary trust terminated on December 28, 1957, the 21st birthdate of Nancy Showers Slaughter. Said agreement provided methods of valuation and distribution for purposes of equalization. Appellants offered the said agreement as their Exhibit No. 1. It amounted to an admission that, properly construed, the will requires an equalization between the five inter vivos trusts and the testamentary trust, as is provided by Paragraph VI(d) of the will. However, such Paragraph expressly provides that such equalization cannot be effected until the termination of the last of the inter vivos trusts.

In Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076 (1907), our Supreme Court construed a testamentary trust contained in the will of Mary A. Gilpin. The plaintiffs there sought to require the executor and trustee to close the estate and deliver the property to the legatees and beneficiaries. At page 1078 of the opinion the court said:

"In applying the law as administered in Texas to the facts of this case, we must bear in mind that Mrs. Gilpin, as the owner of the property in question, had the absolute right to dispose of it by her will as she saw fit, and to put upon the title or the use of the property such limitations as she deemed proper, not in violation of law nor against public policy. Mrs. Fletcher, the daughter, had only such interest in the property as her mother con-

ferred upon her, and it is not for the courts to say that the limitation created by the trust is unreasonable or unjust, if it be lawful. Broadway Nat. Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504; Claflin v. Claflin, 149 Mass. 19, 20 N.E. 454, 3 L.R.A. 370, 14 Am. St.Rep. 393. In the latter case, the court said: 'A testator has a right to dispose of his own property with such restrictions and limitations, not repugnant to law, as he sees fit, and his intentions ought to be carried out, unless they contravene some positive rule of law, or are against public policy'."

Appellants' contentions under their points five and six can only be sustained if a number of the provisions of the will are ignored and no effect is given to them. Their position, which is based primarily upon the provisions of Paragraphs X, VI (b) and VII of the will, would require the court to ignore the provisions, particularly, of Paragraphs VI(a), VI(c) and VI(d), thereof. This the court cannot do without violating the settled rule set out in 90 C.J.S. Trusts § 161, pp. 22–23, as follows:

"In construing a trust, the whole instrument creating or declaring the trust must be considered, in order to determine the settlor's intent, and not merely any particular provision, part, clause, or phrase by itself, and consideration should not be given merely to disjoined parts. All parts, provisions, or terms of the instrument are to be considered, each paragraph provision, or phrase must be read in the light of the whole instrument, and not in isolation, and no clause is to be given undue preference. The meaning of a part of a provision must be determined from the provision as a whole."

The provisions of paragraph VI(d) of the will clearly establish that one of the primary and dominant purposes of the testamentary trust was to provide for an equalization so that each of the three

daughters of E. A. Showers, deceased, would receive an equal amount from the inter vivos trusts and the testamentary trust, taken and considered as a whole, and, in order to achieve such purpose, that the testamentary trust would continue and final distribution from it would not be made to the beneficiaries who would then be entitled to the same until such time as the said inter vivos trusts had terminated and it could be determined what amount each daughter had received, or would have received had she lived, therefrom. It should be kept in mind that in all of said trusts, the minor children of appellant daughters of E. A. Showers, deceased, were named contingent beneficiaries in the event of death of their respective mothers.

The trial court properly held that the testamentary trust will terminate on the date upon which the last of the five inter vivos trusts terminates, irrespective of the date of death of Mary Elizabeth Scherck, and that if any of the adult beneficiaries be dead at such termination date leaving minor children or issue entitled to receive the share which their deceased mother would take if living, such share is to be held in trust for minor beneficiaries until they are 21 years of age; provided that such trust as to such minor beneficiaries is not previously terminated by the trustees pursuant to discretion vested in them, as was found and adjudicated in said judgment of the trial court, but that the equalization provision contained in paragraph VI (d) of the will of E. A. Showers, deceased, shall be effected notwithstanding the continuation of the trust for such minor beneficiaries.

By supplemental brief appellants argue, under their third and fourth supplemental points, that under paragraph VII of the inter vivos trusts the present trustees have the discretion to terminate the same and that by his will E. A. Showers intended to amend and did amend such inter vivos trusts of which he was donor in or-der to bring about a termination of them when Nancy Showers Slaughter became 21 years of age and effect the equalization provided by his will at that time. The difficulty with such contention is that appellants did not undertake to allege or prove in this case that the trustees had abused their discretion or had acted dishonestly, in bad faith or arbitrarily in failing to terminate the inter vivos trusts herein mentioned. It is undoubtedly the general rule that a court will not interfere with trustees in the exercise of a discretionary power except where proper grounds are plead and proved. In Scott on Trusts, Vol. 3, Sec. 334.1, page 1827, it is said:

"Where discretion is conferred upon the Trustee to terminate the trust, he may be guilty of an abuse of discretion in terminating the trust as well as in refusing to terminate it. * * * If there is no standard by which the reasonableness of the trustee's judgment can be tested, the court will not interfere with the exercise of discretion, unless he acts dishonestly or from an improper motive."

Such issues were not before the trial court and cannot be properly raised on this appeal. As has heretofore been noted, the minor defendants herein were represented in this case by a guardian ad litem appointed by the trial court. In the absence of pleadings and proper notice of an action having for its purpose a termination of the inter vivos trusts or requiring the trustees to exercise their discretion and terminate them, the trial court was without power and authority to try out and adjudicate such issues as to such minors, particularly in view of the limited authority of said guardian ad litem. Such issues might be the subject of another law suit but they are not involved in the instant one.

In addition to their counter points, appellees have urged, in the alternative, three cross-points of error. In view of our dis-

position of appellants' points and appellees' counter points, it is unnecessary to pass upon the said cross-points.

The judgment of the trial court is affirmed.