**Conditionally granted in part, Denied in part; Opinion Filed July 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01446-CV

## IN RE XTO ENERGY INC., TIMBERLAND GATHERING & PROCESSING COMPANY, INC., AND BANK OF AMERICA, N.A., Relators

**Original Proceeding from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-00612**

## OPINION

Before Justices Bridges, Fillmore, and Evans
Opinion by Justice Evans

Relators, a trustee and settlor of a publicly traded trust and a wholly owned subsidiary of the settlor, filed a petition for writ of mandamus requesting that this Court order the trial court to grant their special exceptions and dismiss the claims filed against them. They contend the trial court abused its discretion by allowing this suit to go forward and mandamus is required to prevent a trust beneficiary from wrongfully usurping control of litigation on behalf of the trust. We agree the trial court abused its discretion by failing to grant relators' special exceptions and dismiss the claims filed against the settlor and its subsidiary. We disagree, however, that relators are entitled to the dismissal of claims against the trustee. Accordingly, we deny mandamus in part and conditionally grant relators' petition in part.

# I. BACKGROUND

In 1998, XTO Energy Inc. created the Hugoton Royalty Trust with Bank of America N.A., then known as NationsBank, N.A., as its trustee. The Trust assets consist of net profit interests that entitle the Trust to receive 80% of the net proceeds XTO receives from the sale of oil and gas from certain properties. The net profit interests were conveyed to the Trust by XTO under three separate but substantively identical, conveyances. In 1999, XTO conducted an initial public offering, and, currently, forty million units of the trust are publicly traded on the New York Stock Exchange.

Sandra G. Goebel became a unitholder of the Trust in 2005. On May 3, 2013, Goebel sent a letter to Bank of America demanding that it, as trustee, bring suit against XTO and Timberland Gathering & Processing Company, Inc., as well as against Bank of America, for allegedly wrongful acts she contended resulted in damages to the Trust. Goebel asserted that XTO and its wholly owned subsidiary, Timberland, misappropriated approximately $60 million in royalties that should have been paid to the Trust. According to Goebel, XTO and Timberland were operating under non-arm's length contractual sale arrangements that, due to changes in market conditions after the Trust was established, resulted in a pricing structure for Timberland's natural gas gathering and processing services that improperly benefited Timberland at the expense of XTO. Because the royalties paid to the Trust were based on the proceeds received by XTO and not its affiliates, such as Timberland, Goebel contends that XTO continued to operate under the existing contracts because that allowed XTO's wholly owned subsidiary to retain proceeds that otherwise would have been paid to the Trust. Goebel contended XTO was obligated, both under the terms of the conveyances and Texas law, to correct the overpayments to Timberland by renegotiating the sales contracts to reflect current market rates. Goebel further

asserted that Bank of America knowingly failed to object to the self-dealing by XTO, which was a breach of the Bank's fiduciary duty to the Trust.

Outside counsel for Bank of America responded to the demand letter stating that the trustee had investigated the claims and determined they had no merit. The contractual arrangements about which Goebel was complaining were entered into before the Trust was established and were governed by the portion of the profit interest conveyances relating to existing sales contracts. Section 2.01 of the conveyances states that sales may continue to be made pursuant to existing contracts. The section further states that

> [XTO] may amend such Existing Sales Contracts and may enter into one or more Sales Contracts in the future at the prices and on the terms [XTO] shall deem proper in [XTO's] sole and absolute discretion, which may include sales to affiliates of [XTO].

Bank of America concluded that this language in the conveyances negated any implied covenant that might require XTO to renegotiate existing sales contracts to obtain more favorable terms. Consequently, any claims against XTO and Timberland for failure to amend the contracts or against the trustee for failing to monitor or sue XTO for breach of the conveyances would fail. The response concluded that, "in the judgment of the Trustee, bringing suit on the claims described in the Demand would have little chance of success, and would only result in fees, costs, and expenses of litigation being expended to the detriment of the Trust and the unitholders."

On January 22, 2014, Goebel brought this suit "on behalf of, and for the benefit of" the Trust asserting the claims against XTO, Timberland, and Bank of America that had been outlined in her demand letter. Bank of America filed a plea to the jurisdiction and special exceptions contending Goebel lacked standing to bring the suit. Bank of America argued that Goebel failed to plead sufficient facts that would allow her to usurp the Bank's authority as trustee to determine what legal actions to pursue on behalf of the Trust. The Bank further argued that a

–3–

beneficiary has no authority to bring a derivative action on behalf of the Trust against the trustee. XTO and Timberland filed a plea to the jurisdiction and special exceptions on the same grounds. After hearing oral arguments, the trial court denied the special exceptions, construed the pleas to the jurisdiction as special exceptions,[1] and denied them as well. Bank of America, XTO and Timberland filed a petition for writ of mandamus asking this Court to order the trial court to grant their motions and dismiss Goebel's suit for lack of subject matter jurisdiction.

## II. ANALYSIS

### A. Authority of Trustee to Control Litigation on Behalf of Trust

At issue in this case is the scope of a trustee's authority to determine whether to pursue litigation on behalf of the trust it administers. Under the Texas Trust Code, a trustee is generally authorized to compromise, contest, arbitrate, or settle claims affecting the trust property. *See* TEX. PROP. CODE ANN. § 113.019 (West 2014). The specifics of the trustee's powers in this case, however, are set forth in the trust instrument. *See Myrick v. Moody Nat'l Bank*, 336 S.W.3d 795, 801 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (terms of trust instrument may limit or expand trustee powers supplied by the trust code). The trust indenture agreement states that Bank of America as trustee is "authorized to prosecute or defend . . . any claim of or against the Trustee, the Trust or the Trust Estate, to waive or release rights of any kind and to pay or satisfy any debt, tax or claim upon any evidence by it deemed sufficient, without the joinder or consent of any Unitholder." The indenture further states that the trustee, in carrying out its powers and performing its duties, may act in its discretion. This grant of discretion to Bank of America to determine the course of litigation on behalf of the Trust "upon any evidence by it deemed sufficient" is exceedingly broad. We are asked to determine whether, under the circumstances

---

[1] Relators do not challenge the trial court's construction of their plea to the jurisdiction as special exceptions.

presented here, Goebel is permitted to circumvent Bank of America's authority as trustee and bring suit against XTO and Timberland on behalf of the Trust.

Texas courts have held that a trust beneficiary may enforce a cause of action that the trustee has against a third party "if the trustee cannot or will not do so." *See, e.g,. In re Estate of Webb*, 266 S.W.3d 544, 552 (Tex. App.—Fort Worth 2008, pet. denied); *Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Despite this broad language, a beneficiary may not bring a cause of action on behalf of the trust merely because the trustee has declined to do so. To allow such an action would render the trustee's authority to manage litigation on behalf of the trust illusory. Even Goebel concedes that the trustee's refusal to bring suit must be wrongful for her to be allowed to step into the trustee's shoes and maintain a suit on the Trust's behalf. *See* RESTATEMENT (SECOND) OF TRUSTS § 282 (AM. LAW INST. 1959) (if trustee *improperly* refuses or neglects to bring an action against a third person, beneficiary can maintain suit in equity against trustee and third person). What is less clear is the standard applied to determine whether the trustee's action is wrongful.

We have found no Texas cases addressing the right of a beneficiary to enforce a cause of action against a third party that the trustee considered and concluded was not in the best interests of the trust to pursue. Generally, when a trustee is given discretion with respect to the exercise of a power, a court may not interfere except to prevent an abuse of discretion. *See* RESTATEMENT (SECOND) OF TRUSTS § 187. A power is discretionary if a trustee may decide whether or not to exercise it. *See Caldwell v. River Oaks Trust Co.*, No. 01-94-00273-CV, 1996 WL 227520, at *12 (Tex. App.—Houston [1st Dist.] May 2, 1996, writ denied) (not designated for publication). When a trustee is granted the authority to commence, settle, arbitrate or defend litigation with respect to the trust, the trustee is authorized, but not required, to pursue litigation

on the trust's behalf.  *See DeRouen v. Bryan*, No. 03-11-00421-CV, 2012 WL 4872738 at *4

(Tex. App.—Austin Oct. 12, 2012, no pet.) (mem. op.); *see also* RESTATEMENT (SECOND) OF

TRUSTS § 177 cmt c ("It is not the duty of the trustee to bring an action to enforce a claim which

is a part of the trust property if it is reasonable not to bring such an action, owing to the probable

expense involved in the action or to the probability that the action would be unsuccessful or that

if successful the claim would be uncollectible owing to the insolvency of the defendant or

otherwise.").  Based on the language of the trust code and the trust indenture in this case, we

conclude Bank of America's authority to determine whether to file suit on behalf of the Trust

was discretionary.

Under Texas law, a court may not interfere with the exercise of a trustee's discretionary

powers and substitute its discretion for that of the trustee except in cases of fraud, misconduct, or

a clear abuse of discretion.  *See Di Portanova v. Monroe*, 229 S.W.3d 324, 330 (Tex. App.—

Houston [1st Dist.] 2006, pet. denied).

> A court of equity has no right to interfere with and control, in any case, the exercise of a discretionary power, no matter in whom it may be vested; a corporate body or individuals, the aldermen of a city, the directors of a bank, a trustee, executor or guardian; and I add, that meaning and principle of the rule, and the limitations to which it is subject, are in all the cases to which it applies, exactly the same. The meaning and principle of the rule are, that the court will not substitute its own judgment for that of the party in whom the discretion is vested, and thus assume to itself a power which the law had given to another[.]

*City of Houston v. Hous. Police Officers Ass'n*, 715 S.W.2d 145, 147 (Tex. App.—Houston [14th

Dist.] 1986, no writ) (quoting *Stone v. City of Wylie*, 34 S.W.2d 842, 843–44 (Tex. Comm'n

App. 1931, judgm't adopted)).  Allowing a beneficiary to bring suit on behalf of a trust when the

trustee has declined to do so amounts to the type of substitution of judgment that this rule was

designed to prevent.  Accordingly, the court should not allow such a suit to proceed unless the

beneficiary pleads and proves that the trustee's refusal to pursue litigation constitutes fraud,

misconduct, or a clear abuse of discretion.  *See Brown v. Scherck*, 393 S.W.2d 172, 184 (Tex.

Civ. App.—Corpus Christi 1965, no writ) (court will not interfere with trustees in exercise of discretionary power except where proper grounds are pleaded and proved); *see also Di Portanova*, 229 S.W.3d at 330.

**B. Whether Trustee's Refusal to Bring Suit Against Third Parties was Wrongful**

Goebel's petition in this suit is extensive and detailed. The facts alleged, however, are relatively simple. Goebel alleges that XTO breached its duty under the conveyances and Texas law by failing to renegotiate its contracts with Timberland to obtain market rate pricing for Timberland's services. Goebel further contends Bank of America breached its fiduciary duty as trustee by failing to monitor XTO's conduct and force the company to comply with its duty to renegotiate. All of Goebel's allegations hinge on her assertion that XTO had a duty to renegotiate its contracts with Timberland.

Goebel's letter to Bank of America demanding that it bring suit as trustee against XTO and Timberland alleged two different bases of XTO's duty to renegotiate: the conveyances and an implied covenant to market oil and natural gas produced from the subject properties as a "prudent operator." Bank of America hired outside counsel to evaluate Goebel's demand. Goebel has made no assertions challenging the outside counsel's independence or objectivity in this matter. After examining Goebel's demand, outside counsel opined, and Bank of America agreed, that the proposed claims had no merit because the conveyances expressly and unambiguously negated any duty of XTO to renegotiate existing sales contracts. The clause in question stated,

> [XTO] may amend such Existing Sales Contracts and may enter into one or more Sales Contracts in the future at the prices and on the terms [XTO] shall deem proper in [XTO's] sole and absolute discretion, which may include sales to affiliates of [XTO].

This language specifically allowed sales to continue to be made under existing contracts and gave XTO "sole and absolute discretion" regarding whether to amend those contracts.

–7–

Goebel argues this reading of the conveyances is fundamentally erroneous and cannot support Bank of America's decision not to bring suit. We disagree. The language of the conveyances clearly supports Bank of America's conclusion. Goebel argues that the conduct at issue is a failure to exercise an existing right under the contracts to renegotiate the pricing terms rather than a failure to amend the contracts and, therefore, the provision relied upon by Bank of America relating to XTO's discretion to amend is inapplicable. This is a distinction without a difference. The sole purpose of renegotiating the pricing terms of a contract would be to amend the contracts to reflect different terms.

Goebel next argues that, under the doctrine of last antecedent, the phrase "sole and absolute discretion" applies only to the immediately preceding clause, "may enter into one or more Sales Contracts in the future," and not to the clause "may amend such Existing Sales Contracts." The doctrine of last antecedent is neither controlling nor inflexible and is not applicable when "further extension is clearly required by the intent and meaning of the context." *See City of Corsicana v. Willmann*, 216 S.W.2d 175, 176 (Tex. 1949) (last antecedent rule should not be applied without regard to meaning of language read as a whole); *cf. Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 185 (Tex. 2012) (applying last antecedent rule to a statute because otherwise the "construction is nonsensical") (citing 82 C.J.S. *Statutes* § 443).[2]

---

[2] The supreme court in *Williams* cited similar limitations when applying the last antecedent rule to statutory interpretation:

> The last-antecedent doctrine is not an absolute and can be overcome by other indicia of the meaning of the statute. The rule applies only where there are uncertainties or ambiguities, when other rules of construction fail, and when the intent of the legislature is unclear. The last-antecedent doctrine or rule is merely an aid to construction to be used in ascertaining the legislative intent. Since the clear intent of the legislature controls in determining the meaning of a statute, the rule yields to more persuasive contextual evidence of the legislature's intent and to common sense and will not be applied where the context or clear meaning of the word or phrase in question requires otherwise.

82 C.J.S. *Statutes* § 443; *see also Saade v. Villarreal*, 280 S.W.3d 511, 519 n.9 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd) (last antecedent rule "does not apply if anything in the language, context, purpose, or subject matter of the statute suggests it should not").

Bank of America determined that nothing in the context of the conveyances supported Goebel's construction and her interpretation would lead to the absurd result of XTO retaining absolute discretion with respect to the terms of entirely new contracts but not with respect to newly amending the terms of old ones. Such a construction is particularly illogical when the sentence concerning XTO's discretion is immediately preceded by the statement that sales may continue to be made under existing contracts. Because the conveyances specifically allow sales to continue to be made under existing contracts, XTO must necessarily have discretion to not amend those contracts.

Goebel responds that her interpretation is supported by section 1.09 of the conveyances which defines the gross proceeds out of which the proceeds payable to the Trust are calculated. Goebel relies on the portion of section 1.09 that states, as to sales *other than under existing sales contracts*, the gross proceeds under a sales contract between XTO and an XTO affiliate cannot be less than 98% of the proceeds received by the affiliate upon resale to a third party. Goebel argues this provision demonstrates that the conveyances were intended to prevent XTO from diverting monies that should have been paid to the Trust by limiting the sale proceeds it receives from its affiliates. This provision is clearly restricted, however, to apply only to new sales contracts. Nothing in the provision conflicts with Bank of America's position that the conveyances specifically negated any obligation of XTO to renegotiate the terms of existing sales contracts. If anything, the language Goebel relies on indirectly affects XTO's discretion with respect to negotiating the terms of new sales contracts and contradicts her last antecedent argument. Indeed, section 2.01 of the conveyances states that, except as provided by section 1.09, the proceeds payable to the Trust are to be calculated based on the amounts actually received by XTO and not on amounts received by XTO's affiliates "regardless of whether at the time of production or Sale market value should be different from proceeds of Sale." The

conveyances specifically contemplate, therefore, that sales may continue under existing contracts to XTO affiliates under terms that are below market value.

Finally, Goebel contends that Bank of America's construction of the conveyances conflicts with XTO's representations in its public filings. Goebel points to XTO's statements in the prospectus for the Trust's initial public offering and the Trust's 10-K filings. The prospectus stated that XTO believed the terms of its existing sales contracts with its affiliates were competitive with those that could be obtained from unrelated third parties. Goebel does not contend, nor has she made any showing, that this statement was untrue at the time it was made. Neither does she explain how this statement suggests XTO intended the conveyances to impose a duty to renegotiate the affiliate contracts should market conditions render them less competitive over time given that the conveyances specifically allow sales to continue to be made under the existing contracts regardless of market conditions.

The 10-K reports for the Trust stated that XTO "is responsible for marketing its production from the underlying properties under existing sales contracts or new arrangements on the best terms reasonably possible." First, we note that Goebel did not raise the issue of the 10-K statements in her demand letter to Bank of America. Accordingly, Bank of America could not have wrongfully refused Goebel's demand to bring a claim for breach of the conveyances on this basis.[3] Furthermore, because Bank of America determined, based on the advice of outside counsel, that the conveyances unambiguously negated any duty to renegotiate existing contracts, its failure to file suit based on parol evidence contradicting this interpretation could not be considered fraudulent, wrongful, or a clear abuse of discretion. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (unambiguous contract will be enforced as written and

---

[3] Goebel has alleged no claims nor demanded that Bank of America bring claims based on any alleged misrepresentations in the public filings.

parol evidence will not be received to create ambiguity or give contract meaning different than what language imports).

The next asserted basis of XTO's alleged obligation to renegotiate its existing sales contracts with Timberland is the implied covenant to market oil and natural gas produced from the subject properties as a "prudent operator" under Texas law. In her demand letter to Bank of America, Goebel stated she believed XTO was subject to the implied covenant of a "prudent operator" usually applied to a lessee under an oil and gas lease. As noted by Bank of America in its response, Goebel cites no case law applying the prudent operator standard to the settlor of a trust. In addition, Bank of America concluded that any implied covenants such as the prudent operator standard were negated by the express terms of the conveyances.

Covenants will be implied only where necessary to give effect to the actual intent of the parties as reflected by the contract or conveyances as a whole. *See Union Pac. Res. Grp., Inc. v. Neinast*, 67 S.W.3d 275, 281 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "It is not enough to say that an implied covenant is necessary in order to make a contract fair, or without such a covenant it would be improvident or unwise, or that the contract would operate unjustly." *Id*. at 282 (citing *Danciger Oil & Ref. Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)). Covenants are implied when deemed fundamental to the purpose of the contract as expressed in the instrument and only where the contract does not expressly address the subject matter of the covenant sought to be implied. *See Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 222 (Tex. App.—Tyler 2003, no pet.). A contract may lessen the burden of the "prudent operator" standard through an express provision specifying a lower standard. *Id*.

Bank of America concluded that any claim against XTO based on an implied covenant to renegotiate existing sales contracts would likely fail because the language of the conveyances specifically addressed this matter and negated such a duty. The conveyances expressly allow

sales to continue under existing contracts and grant XTO the sole and absolute discretion to determine whether and upon what terms those contracts will be amended. The conveyances further provide that the proceeds payable to the Trust from existing sales contracts are based on the amounts received by XTO rather than amounts received by XTO's affiliates regardless of whether those amounts are below market value at time of sale. Because the conveyances address the matters upon which Goebel sought to enforce an implied covenant, we cannot say that Bank of America's decision not to bring suit constitutes fraud, misconduct, or a clear abuse of discretion.

Goebel contends that Bank of America's decision not to file suit must be discredited because it had a disabling conflict of interest. According to Goebel, Bank of America is faced with the significant prospect of personal liability for not monitoring XTO's conduct and discovering its alleged malfeasance. This argument is largely circular. Goebel essentially contends that Bank of America's decision not to pursue claims against XTO cannot have been made in good faith because Bank of America faces personal liability for failing to pursue those claims earlier. Under Goebel's reasoning, a trustee's discretionary authority to decide whether to file suit on behalf of the trust would be rendered illusory. The trustee's refusal of a beneficiary's demand to bring suit, regardless of how well reasoned or supported the refusal is, could be overridden by merely asserting that the trustee may be liable for failing to assert the very claims it has determined should not be brought at all. Furthermore, the liability Goebel asserts Bank of America would be subjected to is for the damages Goebel claims were caused by XTO's and Timberland's alleged misconduct. If Bank of America believed it faced a substantial likelihood of liability for those damages, it would be more likely to file the claims against XTO and Timberland and seek to diminish its own individual liability.

Goebel's petition states no other factual bases for concluding that Bank of America's refusal to bring suit against XTO and Timberland was wrongful other than the Bank's alleged misevaluation of the merits of the claims and its purported conflict of interest. Having determined Goebel pleaded no particular facts that would support a finding that Bank of America's decision was the result of fraud, misconduct, or a clear abuse of discretion, we turn to whether relators are entitled to mandamus relief on this matter.

## C. Mandamus Relief

Mandamus may be available upon a showing that (1) the trial court clearly abused its discretion by failing to correctly apply the law and (2) the benefits and detriments of mandamus render appeal inadequate. *See In re Schmitz*, 285 S.W.3d 451, 458 (Tex. 2009) (orig. proceeding). As discussed above, Goebel failed to plead facts that would support a finding that Bank of America's refusal to bring suit against XTO and Timberland was wrongful. Accordingly, the trial court abused its discretion by failing to grant relators' special exceptions and allowing Goebel to override the trustee's decision by bringing claims against XTO and Timberland on the Trust's behalf. *Cf. In re Brick*, 351 S.W.3d 601, 607–08 (Tex. App.—Dallas 2011, orig. proceeding). It is the second prong of the standard for granting mandamus that bears further analysis.

The supreme court has rejected a categorical approach to determining when mandamus review is appropriate. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (orig. proceeding). Rather, whether an appellate remedy is adequate is a "practical and prudential" determination. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). Unlike appeal, which is a matter of right, mandamus is an extraordinary remedy, intended to be available in only limited circumstances at the discretion of the court. *See In re Reece*, 341 S.W.3d 360, 374 (Tex. 2011) (orig. proceeding); *In re Prudential*, 148 S.W.3d at

138; *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding). It is a vehicle for correcting "blatant injustice that otherwise would elude review by the appellate courts." *In re Reece*, 341 S.W.3d at 374 (citing *In re Prudential*, 148 S.W.3d at 138). Mandamus is available to review "significant rulings in exceptional cases," where it will:

> [P]reserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*In re Prudential*, 148 S.W.3d at 136. As this Court has noted:

> Although in any case in which a trial court has committed error that might result in reversal on appeal, it could be argued that the parties and the public should be spared the time and expense of awaiting correction of the error on appeal, to conclude that mandamus review is available in any situation where a trial court may have committed reversible error would be to fundamentally alter our system of trial and appeal.

*In re City of Dallas*, 445 S.W.3d 456, 462 (Tex. App.—Dallas 2014, orig. proceeding). "Appellate courts cannot afford to grant interlocutory review of every claim that a trial court has made a pre-trial mistake." *In re McAllen Med. Ctr.,* 275 S.W.3d at 461. Mandamus review is more appropriately reserved for trial court errors where the very act of proceeding to trial, regardless of the outcome, would defeat the substantive right involved. *See Schmitz*, 285 S.W.3d at 459.

The substantive right involved here is the right of a trustee to determine whether the trust will pursue litigation. Because allowing Goebel to proceed to trial on behalf of the Trust defeats Bank of America's right as trustee to control the Trust's involvement in litigation, mandamus relief is appropriate.

The relief sought by relators is the dismissal of Goebel's claims. Generally, when special exceptions are granted, the pleader must be given an opportunity to amend the pleading. *See Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). But an opportunity to amend is not

required if the pleading defect is of a type that amendment cannot cure. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). In this case, Goebel concedes she knows of no facts other than those stated in her petition to support her assertion that Bank of America's refusal to bring suit against XTO and Timberland was wrongful. Instead she requests that, in the event we conclude the special exceptions should have been granted, she be given an opportunity to conduct discovery on the matter. Goebel gives no indication, however, of what type of discovery she wishes to conduct, what facts she believes could be discovered, or why she did not request such discovery earlier.

Goebel cites section 21.556 of the Texas Business Organizations Code as support for her discovery request. Section 21.556 states that, if a corporation moves to dismiss a derivative action brought by a shareholder, discovery in the case is limited to facts relating to the corporation's decision not to bring the suit until the court determines, after notice and hearing, that the corporation's decision was not made in good faith by an independent and disinterested group. TEX. BUS. ORGS. CODE ANN. § 21.556 (West 2012). The effect of this statute is to prevent the expenditure of time and money on discovery related to the subject matter of the derivative proceeding until after the court determines that the corporation's decision not to bring suit was wrongful. It does not authorize fishing expeditions for additional facts to show the corporation's wrongfulness after it has been determined the pleadings are insufficient to support the plaintiff's right to bring the derivative claim.

Because Goebel provides nothing to indicate what, if any, facts she could add to her petition showing that Bank of America's refusal of her demand to file suit was wrongful, we conclude the defects in Goebel's pleading as to her derivative claims against XTO and Timberland cannot be cured by amendment. The appropriate relief, therefore, is dismissal of the claims.

**D. Claims by Beneficiary Against Trustee**

We next address Goebel's claims against Bank of America. Relators contend that nothing in Texas law allows the beneficiary of a trust to bring a derivative claim on behalf of the trust against the trustee. Goebel, in fact, agrees with relators on this issue and we have found no Texas case authority allowing a trust beneficiary to sue a trustee derivatively on behalf of the trust. Goebel contends instead that her action against Bank of America is not derivative in nature. But Goebel's petition clearly states she is bringing her claims "on behalf of, and for the benefit of" the Trust. In bringing claims "on behalf of, and for the benefit of" the Trust, Goebel is attempting to represent the Trust itself. Her claims, as asserted, are therefore derivative.

The Texas Trust Code provides the mechanism by which a beneficiary may sue a trustee. Under the code, any interested person may bring an action to, among other things, construe a trust instrument and determine the liability of a trustee. *See* TEX. PROP. CODE ANN. §§ 115.001 & 115.011 (West 2014). An "interested person" is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." *Id*. § 11.004. The code further defines a "person" to include in relevant part, an individual or "two or more persons having a joint or common interest, including an individual . . . acting as a personal representative or in any other fiduciary capacity." These provisions are similar to those found in the Restatement (Third) of Trusts, which states that a suit against a trustee to redress a breach of trust or otherwise enforce the trust may be maintained by a beneficiary, co-trustee, successor trustee, settlor, or other person acting on behalf of one or more beneficiaries. *See* RESTATEMENT (THIRD) OF TRUSTS § 94 (Am. Law Inst. 2012). Although the Restatement states that a person may bring suit on behalf of other beneficiaries, the comments to section 94 make it clear that this is only the case when the person is acting as a fiduciary, such as when the beneficiary being represented is under an incapacity. *See id*. cmt. d.

As Goebel's claims are currently pleaded, she is not bringing suit on her own behalf or on behalf of beneficiaries for whom she is acting as a personal fiduciary. Instead, she is bringing suit on behalf of the Trust as a whole and impermissibly usurping the role of the trustee to control the Trust's involvement in litigation. Unlike Goebel's claims against XTO and Timberland, however, this pleading defect can be cured by amendment. The trust code permits Goebel to bring claims on her own behalf and her petition could be amended to limit her claims accordingly. *See* TEX. PROP. CODE ANN. §§ 11.0004, 115.001, 115.011.

Relators ask us to require the trial court to dismiss the claims against Bank of America because the bank faces no likelihood of liability absent a wrongful refusal to bring suit against XTO and Timberland. This argument goes to the merits of Goebel's claims rather than her standing to bring them. Allowing Goebel to proceed with her claims on her own behalf does not interfere with Bank of America's authority to control litigation on behalf of the Trust. To the extent Goebel's claims against Bank of America may lack merit, the bank has an adequate remedy in the trial court and by appeal.

### III. CONCLUSION

Based on the foregoing, we conditionally grant the petition for writ of mandamus in part. A writ will issue only in the event the trial court fails to vacate its order of May 22, 2014 denying relators' special exceptions and render an order granting relators' special exceptions, dismissing Goebel's claims against XTO and Timberland, and ordering Goebel to replead her claims against Bank of America. We deny the petition to the extent it seeks dismissal of Goebel's claims against Bank of America.

/David W. Evans/

DAVID EVANS
JUSTICE

141446F.P05

–17–