

# NUMBER 13-18-00169-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KENNETH L. BERRY, INDIVIDUALLY;
KENNETH L. BERRY, AS TRUSTEE OF THE
BERRY DYNASTY TRUST; KENNETH L. BERRY,
TRUSTEE IN A DERIVATIVE CAPACITY FOR
FLYING BULL RANCH, LTD.; AND
CHELSEA NICHOLE BRIERS,                          Appellants,

v.

DENNIS W. BERRY; MARVIN G. BERRY;
ALLEN L. BERRY; FB RANCH, LLC;
BERRY GP, INC. D/B/A BERRY CONTRACTING, INC.;
BERRY CONTRACTING, LP D/B/A BAY, LTD.;
AND BERRY RANCHES, LLC,                          Appellees.

On appeal from the 319th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Perkes**
**Memorandum Opinion by Justice Benavides**

By four issues, Kenneth Berry, individually, in his capacity as a co-trustee of the Berry Dynasty Trust (Trust), and in a derivative capacity for Flying Bull Ranch Ltd. (Ranch), and Chelsea Nicole Briers, his daughter and a trust beneficiary, appellants, appeal from the trial court's grant of a plea to the jurisdiction and summary judgments against them in their suit against Dennis W. Berry, Marvin (Marty) G. Berry, Allen L. Berry (Lawrence) (Kenneth's brother's and co-trustees), Berry GP, Inc. d/b/a Berry Contracting, Inc. and Berry Contracting d/b/a Bay, Ltd. (collectively the Berry companies), FB Ranch, LLC, and Berry Ranches, LLC, appellees. Kenneth and Chelsea argue that the trial court erred by: (1) concluding that they lacked standing to sue the trustees; (2) granting summary judgment on limitations based solely on constructive notice of a memorandum of lease filed in the public records, (3) awarding an arbitrary amount of off-setting attorneys' fees, and (4) denying critical discovery. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

The genesis of the litigation began years before. Marvin L. Berry and Laura Berry, the parents of the four brothers, acquired the Ranch in 1960. The Flying Bull Ranch Limited Partnership was created in 1996 by Laura and Marvin who assigned a two percent general partner ownership interest to FB Ranch and split the limited partnership interest between themselves.

The partnership agreement granted the general partner "full, complete and exclusive authority, discretion and responsibility for the management, control and conduct of the affairs and business of the partnership." Limited partners "shall have no right,

2

authority or power to participate in the management or conduct of the affairs and business of the partnership." The general partner was:

> authorized on behalf of the partnership to do any act consistent with the purposes of the partnership and as the general partner may deem advisable; provided, however, the general partner shall not sell, mortgage, grant a lien on or grant a surface lease for more than three (3) years on the farm and ranch real property owned by the partnership located in Real County, Texas.

Marvin also started Berry Contracting which he grew into a very successful business. He died in 1997. At that time, Kenneth was president of Berry Contracting. In 2000, after a family dispute, Kenneth resigned from nearly all of his functions within the family enterprises, and in 2005, the family entered into a global release under which Kenneth released the Berry companies and individual family members in all capacities and they similarly released him from all causes of action related to facts that existed at that time.

In the years 2000 through 2005, Berry Contracting made lease payments of $40,000 annually for the Ranch as demonstrated by the Ranch ledgers. Sometime after the year 2000, Berry, GP became the umbrella company for all of the Berry companies.

On August 6, 2006, Laura, in her capacity as general partner of FB Ranch, responded to a letter from Kenneth, in his capacity as a co-trustee, requesting financial documents and other records related to the Ranch by stating in part that, "The Ranch is under lease to Berry Contracting, Inc." Laura also questioned whether Kenneth, as a single trustee, was entitled to the information he sought. Kenneth responded to her letter requesting a copy of the Ranch limited partnership agreement and copies of any

3

agreements regarding use of the Ranch.

In September 2006, Kenneth wrote Donetta Beaty, Laura's long-time executive assistant that she shared with Edward Martin, president of Berry Contracting, requesting copies of any Ranch lease agreements to which Berry Contracting was a party.

In March 2007, Berry Contracting signed a written lease with the Ranch for exclusive use of the Ranch in Real County for the period from January 1, 2000, until December 31, 2024, for a total cost of $1 million payable in annual amounts of $40,000. In addition, Berry Contracting accepted responsibility to pay all utility costs it incurred, all property taxes or assessments, and all taxes assessed on all improvements added by Berry Contracting. Berry Contracting further agreed to carry general liability insurance on the property. The lease was signed by Laura for FB Ranch, as the general partner, and by Martin, president of Berry Contracting. A memorandum of the lease was recorded in the property records of Real County in May 2007, reflecting the lease term from January 1, 2000, until December 31, 2024.

In approximately October 2011, Kenneth wrote his mother and brothers in their capacities as general partner and co-trustees complaining that his use of the Ranch for a reserved time period had been disrupted by others and requested a trust meeting to resolve the issues. In 2011, Kenneth again requested records, including copies of the lease and Trust tax records from his co-trustees, Charles Vanaman, attorney for Berry Contracting and other Berry companies, Laura, and the accountant for the Trust.

In June 2014, Kenneth requested that Beaty email him the K-1s (tax documents) for the Ranch partnership, all tax filings and "all other documentation relating to the Flying Bull Ranch Partnership." He also requested all of the Trust tax filings and "all other documents relating to the [] Trust." In his email, Kenneth referenced a conversation with his brother Dennis, who stated there was a hunting lease at the Ranch with Berry GP, and requested "a copy of the original lease including all exhibits and appendices." Kenneth mentioned in his email to Beaty that he had spoken to Laura about his request for records that morning.

In October 2014, Kenneth wrote his brothers and co-trustees, demanding an accounting pursuant to § 113.151 of the Texas Trust Code and requested a statement of accounts from the date of the Trust's inception on July 9, 1997, as well as copies of all tax returns from 1997 to the present, including all K-1s from the Ranch to the Trust. Lawrence responded to the letter and suggested that Kenneth ask Laura for documents. Dennis responded with a nearly identical letter. Both agreed he was entitled to the documents but stated they did not possess them.

On October 29, 2014, counsel for Kenneth requested records from Vanaman. Vanaman responded that he did not have possession or control over the records sought and the records were under Laura's exclusive control. In October 2015, counsel for Kenneth contacted the accountant for the Trust and requested copies of the tax, financial, and accounting records for the Trust, as well as all communication with the co-trustees and Laura. On December 4, 2015, counsel also requested the same information from KPMG, another accounting firm that previously provided those services for the Trust.

5

In January 2016, Kenneth and his daughter Chelsea filed suit, in part, seeking an accounting and copies of the Trust and Ranch partnership documents. Kenneth and Chelsea sued his brothers and the various Berry companies over the Ranch, which was owned by the FB Ranch as the general partner and by the Trust as the limited partner. They alleged: breach of fiduciary duty as to his brothers and co-trustees, conspiracy to breach fiduciary duties and participating in and aiding and abetting breach of fiduciary duties as to all defendants, breach of the partnership agreement by the general partner and the Berry companies, and breach of the 2005 release by all of the defendants. Kenneth sought removal of his co-trustees, an accounting from the Trust and FB Ranch, and declaratory judgment declaring that contracts and other agreements entered into by the Trust in violation of the partnership agreement or entered into in violation of fiduciary duties were null and void. Kenneth sought relief individually, as a co-trustee, and derivatively on behalf of the Ranch. Chelsea is a beneficiary of the Trust and sought relief individually. They claimed that Kenneth's co-trustees and FB Ranch breached their fiduciary duties by: (1) entering into the 2007 written lease with Berry Contracting that was back-dated to January 1, 2000, and extended for a 99-year term in violation of the partnership agreement between FB Ranch and the Ranch; (2) entering into the lease for less than adequate consideration in violation of the partnership agreement; (3) concealing the terms of the lease from Kenneth and Chelsea until 2015; and (4) by diverting lease payments from the limited partnership to Berry Ranches.

On October 20, 2016, Laura, Dennis, Marty, Allen, and their children, Berry G.P., Inc. d/b/a Berry Contracting, Inc. and the Berry companies, Berry Ranches, LLC, and FB Ranch in all capacities entered into a consent and release agreement in which they recited that after the 2007 written lease, Laura received checks from Berry Contracting for the lease payments made payable to the Flying Bull Ranch which she then deposited into the operating account of the Berry Ranches, rather than into the operating account of the Ranch. Laura characterized the deposits into the wrong account as an inadvertent error. After deducting credits paid by Berry Ranches to the Ranch in the past, Laura transferred $440,000 from Berry Ranches to the Ranch. The parties modified the lease between the Ranch and Berry Contracting to a three year term pursuant to the terms of the partnership agreement between the Trust and the Ranch. All of the beneficiaries, except Kenneth and Chelsea, released Laura, the Trust, the Ranch, Berry G.P., and the Berry companies, in all of their capacities, from all liabilities for their actions. The release stated that no one thought litigation by Kenneth and Chelsea was in the best interest of the Trust or the partnership.

Defendants challenged Chelsea's and Kenneth's standing to bring suit by a plea to the jurisdiction. The trial court granted the motion as to Chelsea early on and granted the motion as to Kenneth's standing in a derivative capacity on behalf of the partnership later. Defendants also filed a motion for summary judgment alleging that Kenneth's suit was barred by limitations no later than in May 2011, four years after the memorandum of lease was filed in the deed records in Real County. Other motions for summary judgment were filed. After multiple hearings and rulings, the trial court granted defendants' motion

7

for summary judgment as to limitations. In July 2017, the parties entered into a Rule 11 Agreement to sever their disputes regarding the 2017 lease between Berry Contracting and the Ranch. By August 2017, the parties entered into a stipulation that portions of the Trust were not ambiguous.

The parties presented trial briefs and evidence as to attorneys' fees, and after a hotly contested two-day bench trial, the trial court granted attorneys' fees as follows: $85,000 to Kenneth, $85,000 to the Berry defendants, $288,850.85 to Berry Ranches, and $297,868.73 to FB Ranch. The trial court awarded contingent appellate attorneys' fees to the prevailing appellant.

After the trial court signed the final judgment, Kenneth timely requested findings of fact and conclusions of law regarding the trial court's ruling on attorneys' fees; filed a motion for new trial on the entire case; and timely filed a notice of past due findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296, 297, 329b. The motions were overruled by operation of law. *See id.* R. 329b*.* This appeal followed.

## II. STANDING

By their first issue, Kenneth and Chelsea argue that Chelsea had standing as a beneficiary of the Trust and Kenneth had standing to bring derivative claims on behalf of the partnership.

## A. Standard of Review

Standing is a necessary component of a court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). To have standing a party must have a "sufficient relationship with the lawsuit so as to have a

'justiciable interest' in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "As a component of subject matter jurisdiction, we review a claimant's standing de novo." *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). "The standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012).

**B.    Applicable Law of Standing Under the Trust Code**

The trust code provides that a district court has jurisdiction "over all proceedings by or against a trustee and all proceedings concerning trusts." *See* TEX. PROP. CODE ANN. § 115.001(a). Kenneth and Chelsea brought suit in part to require an accounting, to remove the co-trustees, and to make determinations of fact affecting the administration of the trust, i.e. their claims of breach of fiduciary duty. All are claims over which the district court has jurisdiction.

The trust code further provides that "[a]ny interested person may bring an action under Section 115.001 of this Act." An "interested person" as defined by the trust code is:

> a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding.

*See id.* § 111.004(7). Necessary parties to an action are those beneficiaries of the trust "designated by name," "a person who is actually receiving distributions from the trust estate at the time the action is filed," and the trustee serving at the time the action is filed.

9

*Id.* § 115.011(b)(2), (3), (4). There is no dispute that Kenneth had standing under the trust code.

## 1. Chelsea is an Unnamed Contingent and Demand Beneficiary

Chelsea argued that she had a viable interest as defined in the trust code and therefore had standing. *See id.* § 111.004(6).[1] "Interest" is defined as "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible." *Id.* Chelsea's interest in the Trust is that of an unnamed contingent beneficiary as Kenneth's daughter. She is also a demand beneficiary who may receive a portion of the trust income upon demand on the trustee as set forth in the trust document.

Defendants argued that § 115.011, which provides that contingent beneficiaries named as a class are not necessary parties to an action under § 115.001, means that Chelsea does not have the right to bring an action against the trustee pursuant to § 115.001. *See id.* §§ 115.001, 115.011. In *Davis v. First National Bank of Waco*, the court held that "[a]n expectant heir has no present interest or right in property that he may subsequently inherit and consequently he cannot maintain a suit for the enforcement or adjudication of a right in the property," which describes Chelsea's circumstance regarding the Trust. 161 S.W.2d 467, 472 (Tex. 1942); *see Davis v. Davis*, 734 S.W.2d 707, 709–10 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (concluding that appellant "did not have standing to sue based on his claim that he is a potential beneficiary of trust assets" and explaining that "[o]ne cannot maintain a suit for the enforcement or

---

[1] Although referred to as the Texas Trust Code, Title 9, Trusts, Sections 100.001-124.002, is now found within the Texas Property Code.

adjudication of a right in property that he expects to inherit, because he has no present right or interest in the property"). The trial court properly granted the plea to the jurisdiction against Chelsea and dismissed her from the suit.

We now address the remainder of appellants' challenge to the trial court's ruling on standing as to Kenneth.

### 2. Kenneth's Claims on Behalf of the Trust and Limited Partnership

The trial court found that Kenneth as co-trustee had standing to sue his co-trustees but did not have standing to sue derivatively for the Ranch of which the Trust is a limited partner or as a trustee to sue non-co-trustee third-parties.

Under § 113.019 of the Texas Trust Code, a trustee is generally authorized to compromise, contest, arbitrate, or settle claims affecting trust property. TEX. PROP. CODE ANN. § 113.019; *see In re XTO Energy Inc.*, 471 S.W.3d 126, 130 (Tex. App.—Dallas 2015, no pet.). In this case, the Trust provides that the Texas Trust Code applies, except for §§ 113.052, 113.053, and 113.054, which relate to self-dealing. *See* TEX. PROP. CODE ANN. §§ 113.052, 113.053, 113.054. The Trust specifically allows the trustees to deal with related and affiliated entities.

Texas courts have held that a trust beneficiary may enforce a cause of action that the trustee has against a third party "if the trustee cannot or will not do so." *In re XTO Energy Inc.*, 471 S.W.3d at 131. However, "a beneficiary may not bring a cause of action on behalf of the trust merely because the trustee has declined to do so." *Id.* Instead, the trustee's refusal to bring suit must be wrongful for a beneficiary to be allowed to step into the trustee's shoes and maintain a suit on the Trust's behalf. *See id. (*citing RESTATEMENT

11

(SECOND) OF TRUSTS § 282 (Am. Law Inst. 1959)); *Brown v. Scherck*, 393 S.W.2d 172, 184 (Tex. App.—Corpus Christi–Edinburg 1965, no writ) (stating a court will not interfere with the trustee's exercise of discretionary power except where proper grounds are pleaded and proved). The *XTO* Court required the trust beneficiary to plead and prove that the trustee's failure to bring suit constituted fraud, misconduct, or a clear abuse of discretion. *See In re XTO Energy Inc.*, 471 S.W.3d at 136. Similarly, this Court previously refused to grant mandamus after the trial court granted a plea to the jurisdiction for lack of standing brought by a beneficiary who claimed a breach of fiduciary duty against a trustee and executor of a trust. *See also In re Benge*, No. 13-17-00616-CV, 2018 WL 1062899, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 27, 2018, orig. proceeding) (mem. op.).

Here, the remaining co-trustees and potential beneficiaries entered into a 2016 release with other Berry companies over the monies that were not deposited to the Flying Bull Ranch Ltd. account, as Kenneth alleges they should have been, from the Berry lease. The trust code provides that co-trustees are intended to act by majority rule. *See* TEX. PROP. CODE ANN. § 113.85(a). The other co-trustees indicated their approval of the resolution of the issue with FB Ranches by the payment of $440,000 to the Ranch and by the revision of the 2007 Lease.

Kenneth's derivative suit on behalf of the Ranch was brought in his capacity as a co-trustee against third-parties on behalf of the Ranch. The Trust owns a limited partnership share of the Ranch. As a general rule, limited partners, do not have the right to sue on behalf of a limited partnership. *See* TEX. BUS. ORG. COE ANN. §§ 153.402,

12

153.403. In addition, the other limited partners have released their claims against such third parties and called on Kenneth to drop his claims in a derivative capacity. Based upon the plain language of the statute, Kenneth may not maintain those derivative claims. *See* § 153.402.[2] Under these circumstances, the trial court properly held that Kenneth did not have standing as a co-trustee to sue the third parties on behalf of the Trust and the release rendered most of his claims moot. *See id.; In re XTO Energy Inc.*, 471 S.W.3d at 131.

We overrule Appellant's first issue.

### III.   STATUTE OF LIMITATIONS

By his second issue, Kenneth challenges the trial court's ruling that his claims for breach of fiduciary duty are barred by limitations based upon the recording of the memorandum of lease in the deed records in Real County in 2007. Kenneth argues that limitations was tolled by the discovery rule, fraudulent concealment, and the continuing tort doctrine. According to the co-trustees and Berry entities, the memorandum of lease was filed in the Real County deed records in 2008, and the filing was notice to the world

---

[2] Section 153.402 provides in part:

(a) Subject to Subsection (b), a limited partner may not institute or maintain a derivative proceeding unless:

(1) the limited partner:

(A) was a limited partner of the limited partnership at the time of the act or omission complained of; or
. . .

(2) the limited partner fairly and adequately represents the interests of the limited partnership in enforcing the right of the limited partnership.

TEX. BUS. ORG. CODE ANN. § 153.402(a).

13

of its existence.

## A.   Standard of Review

A trial court's summary judgment ruling is reviewed de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting this review, the Court takes as true all evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in the nonmovant's favor. *Id.*

A party moving for a traditional summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* (citing TEX. R. CIV. P. 166a(c)). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must:

> (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.

*Id.*

"[A] cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Knott*, 128 S.W.3d at 221. Put differently, a cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Archer v. Tregallas*, 566 S.W.3d 281, 288 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Under this rule, a cause of action for

breach of contract accrues at the moment the contract is breached. *Id.* (quoting *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015)).

**B.      Applicable Law and Discussion**

**1.   Breach of Fiduciary Duty**

Breach of fiduciary duty claims have a four-year statute of limitations. *Trousdale v. Henry*, 261 S.W.3d 221, 224 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). To prove a cause of action for breach of fiduciary duty, the proponent must establish the fiduciary relationship, breach, causation, and damages. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).

"The fiduciary owes a duty of full disclosure of matters concerning the parties' interests and a strict duty of candor and good faith. The fiduciary may be punished for breaching these duties." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 231 (Tex. 2019) (internal citations omitted). "A fiduciary relationship gives rise to a duty of full disclosure of all material facts." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015); *see also Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) (failing to disclose existence of an oil and gas lease on estate property was a breach of fiduciary duty by trustee). Furthermore, full disclosure of information concerning a partnership is required upon demand by a partner or the partner's representative. *See* TEX. BUS. ORG. CODE ANN. § 152.213. Additionally, a trustee is required to respond to a request for an accounting. *See* TEX. PROP. CODE ANN. § 113.151.

In his capacity as a co-trustee and beneficiary of the trust, Kenneth sought copies of any lease agreements affecting the Ranch from Laura, the general partner who operated the Ranch beginning in 2006, and continuing intermittently through 2015. The partnership agreement governing the Ranch and the Trust were established in 1967. Kenneth sought copies of the lease and various other documents related to the Trust and the Ranch from his co-trustees beginning in 2011. Laura told Kenneth in an August 6, 2006 letter, that the Ranch was leased to Berry Contracting, which put Kenneth on notice that there was a lease. The lease was oral until March 2007, when it was reduced to writing and was signed by Laura, as the general partner of the Ranch, and by Martin, as president of Berry GP. In May 2007, a Memorandum of Lease was filed in the deed records of Real County.

Appellees argue, and the trial court agreed, that their filing of the memorandum of lease in the deed records in Real County was sufficient to begin the statute of limitations on Kenneth's claim for breach of fiduciary duty regarding the lease based upon *Hooks v. Samson Lone Star, L.P.*, 457 S.W.3d 52 (Tex. 2015), and other authorities. Kenneth argues that the general partner's and his co-trustees' failure to provide him with copies of the lease or to inform him of its terms was a breach of fiduciary duty and that he had no responsibility to search the deed records when all of the parties to the lease remained silent.

An instrument that is properly recorded in the proper county is "notice to all persons of the existence of the instrument." TEX. PROP. CODE ANN. § 13.002(1). However, it has long been held by Texas courts that the records of a deed or mortgage is "constructive

16

notice only to those who have subsequently acquired some interest in or right in the property under the grantor or mortgagor." *Leonard v. Benford Lumber Co.*, 216 S.W. 382, 384 (Tex. 1919) (quoting *Stuyvesant v. Hall*, 2 Barb. Ch. 151 (N.Y. 1847)). More recently, in *Archer*, 566 S.W.3d at 290, the Texas Supreme Court upheld the use of the discovery rule on a case involving a right of first refusal even though the deed was recorded.

The *Archer* Court recognized that the injury to the right of first refusal holders was similar to that of "property owners who have no duty to routinely search public records for documents impugning their title." *Id.* at 291 (quoting *Cox v. Clay*, 237 S.W.2d 798, 804 (Tex. App.—Amarillo 1950, writ ref'd n.r.e.); *cf. Leonard*, 216 S.W. at 384 (noting that "registration of an instrument carries notice of its contents only to those bound to search for it, among whom are subsequent purchasers")). The trial court and the parties did not have the benefit of the *Archer* case at the time of the summary judgment hearing. Under *Archer* and the authorities it relied upon, a trustee would have no duty to search the deed records for impairments to its title by subsequent events.

Defendants moved for summary judgment solely based on constructive knowledge of the lease resulting from the filing of the memorandum of lease in Real County. The *Archer* case holds that deed records do not furnish constructive knowledge to an owner of property of *subsequent* impairments to title. *See* 566 S.W.3d at 290. We sustain Kenneth's second issue.

## IV.  CONCLUSION

We affirm the judgment of the trial court in part on the issue of standing. We reverse the trial court's grant of summary judgment on limitations and remand the case for further

17

consideration including the trial court's rulings on the issues of attorneys' fees and discovery which are no longer ripe for our review. *See* T<small>EX</small>. R. A<small>PP</small>. P. 47.1. We award fifty percent of conditional appellate attorney's fees found by the trial court and fifty percent of costs to appellees.

GINA M. BENAVIDES,<br>
Justice

Delivered and filed the
5th day of March, 2020.